NATIONAL BANK OF GREENSBORO et al v. J. E. GILMER et al.

*Resulting Trusts—Assignment for Benefit of Creditors, Validity of—Failure by Assignor to File Schedule of Preferred Debts.*

1. To establish a parol trust in land in favor of a person whose money is alleged to have gone into the purchase and improvement of the land, the evidence must show the exist- ence of the facts constituting the trust at the time of the transmission of the legal title.

2. While the Act of 1893 (ch. 453) does not prohibit *bona fide* mort- gages to secure one or more pre-existing debts, yet, where a mortgage is made of the entirety of a large estate for pre- existing debts (omitting only an insignificant remnant of property) the mortgage is in effect an assignment for the benefit of creditors secured therein, and is subject to the regulations prescribed in said Act of 1893.

3. Under the Act regulating assignments for benefit of creditors (ch. 453, Acts of 1893) the failure of the assignor to file the schedule of preferred debts as required in said Act, renders the deed of assignment void as to attaching creditors.

PETITION by defendants to rehear the same case, reported in 116 N. C., 684. The petition was as follows:

"1st. That the above-entitled cause was regularly heard at the February Term, 1895, of the Supreme Court of North Carolina, upon the call of the 9th Judicial Dis- trict, and an opinion rendered by his Honor, AVERY, Justice, said cause having been taken by appeal from the Novem- ber Term, 1894, of FORSYTH Superior Court. Your peti- tioners now make, as part of this petition, the record of

said cause, as appears in the Supreme Court aforesaid. And now ask and pray for a rehearing of said cause, upon the following alleged errors of law and matters overlooked, wherein your petitioners most respectfully say they have just cause of complaint.

"2nd. Your petitioners respectfully say : That the first alleged error was in relation to what is called in the pleadings the Factory Lot, wherein the Court held that the evidence offered by the defendants, to establish a trust in said factory lot in behalf of John L. Gilmer and Powell Gilmer, was not sufficient; but that the said evidence only created the relation of debtor and creditor between J. E. Gilmer and wife, Laura Gilmer."

1st error : That the court committed an alleged error of law, in that they held the said contract of J. E. Gilmer and wife, Laura Gilmer, was executory, and therefore the notes became the property of J. E. Gilmer by his wife's death. (See *George v. High*, 85 N. C., 99 ; *Dula v. Young*, 70 N. C., 450). For that it is manifest, to sustain the trust in this case, the contract between husband and wife was executed at the time, and under the express agreement with his wife, J. E. Gilmer took his wife's money, which he then had, and purchased the factory lot and constructed the improvements thereon.

II. For the alleged matters overlooked : The Court said "he bought the land with the firm's money, and constructed the building thereon also with the funds of the firm;" whereas the court overlooked the testimony of J. E. Gilmer, to-wit : "that the money in the firm of Edmunds & Gilmer was his wife's money, and which he took out of the firm, by express agreement between his wife and himself that he should so take out the funds, buy the lot and construct the factory on it." The Court overlooked the. testimony of E. C. Edmunds to the same import.

117—27

The Court further said : "He subsequently, in 1891, bought his partner out without any directions or instructions from his wife, who was not consulted ;" whereas the Court overlooked the testimony of J. E. Gilmer, that he "bought his partner out by the express direction of his wife, who was consulted about the matter, and by, an agreement with her that he would, with the money of her's in the firm, purchase the lot and build the factory thereon."

The Court further said : "In 1892 he executed more notes to his wife and entered credits on those then existing." In this the Court was misled by the printed record, taken from erroneous copy made by the trial Judge, who inadvertently put in 1892 for "1882," as this will plainly appear from the notes of the evidence taken by the Judge at the trial, in his own handwriting, and by the original notes themselves, which were exhibited on trial.

III. For alleged errors of law and matters overlooked : In that the court held that the deed in trust, from J. E. Gilmer to J. W. Sheppard, was void under the Acts of 1893, chapter 463, for failure to file schedule of preferred debts by trustor, and for failure to file inventory and accounts by trustee, as provided in said act.

The Court says : "When a mortgage is made of the entirety of a large estate, for a pre-existing debt, omitting only an insignificant remnant of property, said mortgage comes within the provisions of said Act." The Court overlooked the evidence that there was a large amount of property of greater value than that conveyed in the trust, owned and held by the trustor at the time of the execution of said deed.

That the court has overlooked the fact that the trust contained a clause of defeasance, making it an ordinary

deed in trust and not a general assignment for the benefit of creditors. See *Woodruff* v. *Bowles*, 104 N. C., 197.

For alleged errors of law : "For that the court held that the deed in trust, aforesaid, was a general assignment.

For that the court held that such deed in trust comes under the provisions of said act, when it is manifest from the provisions thereof that the said act of Assembly is an act regulating and providing for the settlement of the estates of insolvents, by providing that all their debts shall at once become due, and for the settlement of their estates before the clerk.

Your petitioners respectfully say : The court having only granted a new trial, there is no order made in the cause, that your petitioners must perform, before prefering this petition. Your petitioners, therefore, respectfully ask of the court for the alleged errors of law and matters overlooked, that they be allowed a rehearing of said case, upon the two restricted and specified points as herein set forth."

On the petition AVERY, J., endorsed the following order :

"I am of opinion that a rehearing should be granted upon the questions :

"1. Whether the court overlooked any testimony tending to take the deed executed by J. E. Gilmer to J. W. Sheppard out of the class of deeds of assignment to which the Act of 1893, chapter 453, is applicable.

"2. Upon the question whether, in any aspect of the evidence, there was error in holding that the deed executed by J. E. Gilmer, to his sons, was without consideration and void as to creditors, and that the agreement of J. E. Gilmer with his wife was executory, and especially upon the question whether the testimony of J. E. Gilmer and E. C. Edmunds was not overlooked by the court, in stating

the conclusion of law as to the validity of said last-named deed.

(Signed.)        "AVERY, J."

*Messrs. Watson & Buxton, Jones & Patterson,* and *Glenn & Manly,* for petitioners.

*Messrs. Dillard & King, D. L. Russell* and *Ricaud & Weill, contra.*

FURCHES, J.: This case is regarded as one of importance to the parties and to the public, and as two gentlemen of recognized learning, practicing in this court, have certified that they have examined the opinion delivered at the last term and published in 116 N. C., 684, and the authorities there cited, and that they are of the opinion that there are manifest errors in this opinion, and, a rehearing having been ordered, it becomes our duty to give the case a careful reconsideration.

The petition points out two questions involved in the case, and decided by this Court, as erroneous and the order for a rehearing is confined to these questions. The first error assigned is as to what is called in the pleadings the "Factory Lot," which the defendant J. E. Gilmer conveyed to his sons, J. L. Gilmer and Powell Gilmer, on the 2nd day of August, 1893. As grounds of this error the petition alleges that the court overlooked the evidence of the defendant Gilmer, as follows: "That the money in the firm of Edmunds & Gilmer was his wife's money and which he took out of the firm by express agreement between his wife and himself that he should take out the funds, buy the lot and construct the factory on it." We have read the evidence of the defendant Gilmer with care and fail to find the paragraph quoted in the petition, as shown above. The petition also states that one of the notes executed by

the defendant Gilmer to his wife as in 1892, was error and should have been 1882; but upon the argument it was admitted by one of the counsel for defendant that it was given in 1892 as it appears of record.

The learned counsel who certify to the manifest error of the court say that the strongest view of the evidence for the defendant should have been taken by the court, whereas, the court selected the strongest part of the evidence for the plaintiff, and quotes the following from the evidence of the defendant J. E. Gilmer, to-wit : "It was an agreement, an understanding between me and my wife that I should use her money in this way." And further on he says, "$9,000 or $10,000 of her money went into the factory. As for money collected in 1892 I put it by her express direction, in the factory real estate."

We agree to the proposition that the court should have considered the evidence most favorable to the defendant— that is, if, from the evidence of one witness, the jury might have found for defendant, and from the evidence of another, or all the other witnesses, they should have found for the plaintiff, the court should have submitted the issue of fraud to the jury, as the court could not tell which witness the jury would believe. But that is not this case. Here all the evidence relied upon by defendant comes from the defendant himself, corroborated to some extent, as he alleges, by the testimony of Edmunds and Dr. Lash. Therefore the testimony of the defendant Gilmer and of Edmunds and Dr. Lash, that contradicts the statement above quoted (and this is the strongest statement for him to be found in his testimony) is of equal credibility, as that for him. If none of it is to be believed then it proves nothing. But if one part of it is to be believed the other part is to be believed. Therefore, in order to determine whether it proves the pro- position—that is, whether it proves that defendant Gilmer

used his wife's money in the purchase of the factory prop-
erty, out of which a trust was created and resulted in her
and her heirs—the whole of his testimony upon this point
should be considered together as a whole. It therefore
becomes necessary that we should make a few quotations
from the evidence of the defendant Gilmer, which we pro-
ceed to do as follows: "The money that I used of hers I
gave my notes for. These notes were given the time they bear
date; amount thereof $9,200 and interest amounting now
to more than $13,00. In 1891 they amounted to $11,000
or $12,000. The notes, ten in number payable to Mrs.
Laura A. Gilmer, put in evidence. One of these notes
was given March 1892 for her half interest in the
Florida lands." Another note for two bonds gotten by
her from I. G. Lash's estate. I gave these notes to my
wife and she told me to keep them for her in my safe.
These notes were for the large sum of money mentioned in
in the deed.

Again : "The construction of the warehouse paid for by
checks of Edmunds & Gilmer and by currencey, some of it
belonged to said firm and some of it to myself. "_____"
In 1894 I bought Edmunds out, giving him checks on the
Wachovia Bank. I got the deed May 26, 1891, paying
him $8,000.____The notes were my wife's property; I owed
them to her at her death and I was keeping them for her
in my safe_____

"The money I got from her from 1880 to 1886, I used in
general course of business. As for money collected in
1892, I put it by her express directions in the factory real
estate. "

E. C. Edmunds, former partner, and witness for defend-
ant J. E. Gilmer, testified as follows: "In buying lot in
Winston, we paid for it $2,400, out of the funds of Edmunds
& Gilmer. Mrs. Gilmer had said that we must buy a lot

and build a factory thereon.   The factory cost about $14,-
500 ; was paid for by checks of Edmunds & Gilmer; some-
times we would pay cash and be reimbursed from funds
that came into the business.   We began business in Decem-
ber, 1890, and dissolved in August, 1891.   J. E. Gilmer said
he wanted the factory to give to his sons. _____The lot was
bought and factory built with assets of Edmunds & Gilmer.
Mr. Gilmer paid me for my interest in 1891. ''

   Dr. Lash, brother-in-law and witness for defendant Gil-
mer, testified as follows : "On two occasions I remember
Capt. Gilmer and his wife being present, she told of her
money being kept separate ; she said he was not to use it
in his business, that it was to be kept for her children. ''
"In the latter part of 1892 or early in 1893 she told me
she had decided to put the boys in the tobacco business
when they finished school.   She thought there was a bet-
ter future for them in tobacco than in merchandising. ''

   This being the evidence in the case upon the question of
consideration and resulting trust in Mrs. Gilmer, and ( we
will say )plaintiff demurs to the evidence, could the Court
say that it established a trust in Mrs. Gilmer?   Taking
the evidence of the defendant Gilmer as a whole, which we
are bound to do, and which the jury would be bound to do,
acting under proper instructions from the court, can it be
justly claimed that there is any evidence which ought to
go to a jury to establish the proposition that the factory
was bought with Mrs. Gilmer's money?   Would it not be
better for defendant Gilmer to reconcile this quotation made
by the gentlemen who certify to the error committed by
the court (as they think) by saying he used $9,000, or
$10,000, he had borrowed from his wife, and for which he
gave her his notes, which notes were due and owing her
when she died?   That it was this money he used in the
tobacco business and in buying and building the tobacco

factory. Taking his evidence all together it seems to us it cannot be reconciled in any other way, if it can in this way. But to establish a parol trust, the evidence must establish the facts which constitute the trust at the time of the transmission of the legal title. It cannot be created by parol after that time. Here, the factory lot was bought by Edmunds & Gilmer, in 1890, and factory buildings erected. In 1891 Edmunds sold his interest in the factory building and business to the defendant Gilmer. Gilmer paid him for the same and he executed a deed to Gilmer therefor on the 26th day of May, 1891. And one of the notes of defendant Gilmer was given the year after he purchased Edmund's interest, and two years after Edmunds & Gilmer purchased the factory lot from Whitaker and erected the buildings thereon. It was after Gilmer purchased Edmund's interest in the factory that Mrs. Gilmer directed him to collect the Reynolds debt and put it in the factory. It was the last of 1892 or early in 1893, says Dr. Lash, that Mrs. Gilmer told him she had "decided to put the boys in the tobacco business when they finished school." And Edmunds says that in May, 1892, when defendant Gilmer bought him out, he said "he wanted the factory to give to his sons." So, it appears that all of Mrs. Gilmer's money, which went into the tobacco business by her direction, was after the property had been bought and paid for, and deeds executed, and at a time when a parol trust could not be constituted. We find no error as to this assignment.

The other question called to our attention by the petition in which it is alleged the court committed error, is as to the application of Chapter 453, Acts 1893, which requires the "*Trustor or Assignor*" to file a sworn schedule of preferred debts, &c., within five days, is mandatory and not directory. It was so held in this case at the last Term, and

BANK *v.* GILMER.

has been so held at this Term in *Frank* v. *Heiner* and in *Glanton* v. *Jacobs*, and we see no reason for changing this ruling as to cases in which it applies.     Besides, the cases of *Frank* v. *Heiner* and *Glanton* v. *Jacobs*, this ruling is sustained by *Turnipseed* v. *Schaefer*, 76 Ga., 109 ; *Mather* v. *McMillan*, 60 Wis., 506 ; *Pratt* v. *Stevens*, 26 Hun., N. Y., 229 ; *Ferry* v. *Butler*, 43 Barb., 395 ; *Cook* v. *Kelly*, 12 Abb., N. Y., 35.

The only question left for our consideration is as to whether the deed of defendant Gilmer to Sheppard is a *deed of trust* or assignment within the meaning of the statute of 1893.     It was stated in the opinion of this Court at last Term, when considering this case, that it did not apply to a mortgage given to secure a present or pre-existing debt, but only to such trust as amounted substantially to an assignment.     The statute uses the terms *deeds of trust* and assignments.     This conveyance is by "indenture" to J. W. Sheppard "trustee," but this would have been the formal parts of a mortgage, deed in trust or assignment. So, it becomes necessary to look to the scope, object and result to determine whether it is such *trust* or assignment to which the statute of 1893 applies.     We find that the defendant Gilmer in his evidence, referring to it quite a number of times, with but one exception calls it "my assignment," and once he calls it *"my deed of trust."*     It is made to secure and pay twenty odd debts and a number of creditors.     The debts named amount to over $49,000, and the property assigned to the trustee brought only $25,000, when sold.     Besides the debts named in the assignment or deed of trust to Sheppard, the defendant owed and was liable for about $150,000, and this convey-ance conveyed substantially all the property the defendant owned, liable to execution, so nearly so that when plaintiff issued executions upon the judgments the sheriff returned

them, "unsatisfied, and no property out of which to satisfy them to be found."

This it would seem has all the substantial elements of an assignment or, at least, is such a *deed in trust* as it was intended the Act of 1893 should be applicable.

But it is contended by defendant that this *deed in trust* has a clause of defeasance and this distinguishes it from an assignment, and authorities are cited to sustain this distinction. We do not say that this distinction is usually observed. But if allowed to prevail in cases like this, as is said in the opinion at the last Term, it would put it in the power of any insolvent debtor to avoid the provisions of this statute by leaving out some inconsiderable amount of property, or even by inserting a defeasance clause though everything was conveyed, thereby rendering the statute a nullity. We cannot agree to this.

We agree with counsel for defendant that the Act of 1893 was not intended to prevent preferences. But it was intended to prevent fraudulent *deeds in trust* and assignments, which had become to be of such common occurrence. To do this, it required the assignor and *trustor*, where it was equivalent to an assignment, to file a verified schedule of the debts preferred, stating when such debts were made, and the circumstances under which they were made, and required that the schedule shall be filed within five days from the date of registration, and the trustee or assignee shall not sell any property for ten days from the date of registration. The Act seems to make this a necessary part of the execution of such conveyances, and if the assignor does not comply with this requirement, the courts will pronounce it a legal fraud, and void. *Knight* v. *Packer*, 1 Beasley, Ch. 216; *Hill, Fountain & Co.* v. *Alexander*, 16 Lea, Tenn., 496.

We, therefore, fail to find that the court mistook or

omitted any important fact in considering this case at the last term.    Nor do we find any error in the judgment then pronounced.    Therefore the petition to rehear is dismissed.

Dismissed.