BROWN & COMPANY (Incorporated) v. R. M. NIMOCKS and
    W. S. COOK, Assignee of R. M. NIMOCKS.

(Decided April 11, 1899).

*Assignment—Schedule—Preferred Debts—Act of 1893,*
*Chapter 453.*

1. The failure to file with the Clerk of the Superior Court, within
   five days after the filing for registration of the deed of
   assignment, the verified schedule of preferred debts, required
   by the Act of 1893, renders the assignment null and void.

2. The essential requisites to be stated in the schedule are, the
   name of the creditor, and the amount, date, nature of the
   debt—in their absence, the debt remains a debt, but has no
   preference. The term *"nature of the debt"* is descriptive of
   its character and consideration—as for example, taxes,
   money borrowed, medical attendance, or merchandise, etc.,
   as the case may be. If debtor is bound as surety only, it
   should be so stated. The mere form of words is immaterial
   but there must be a substantial compliance with the statute.

3. Preferences insufficiently stated do not vitiate the entire sched-
   ule—they are simply eliminated from the schedule, leaving
   it in full force as to the others. *Brannock v. Brannock,* 32
   N. C., 428.

CIVIL ACTION upon a money demand, accompanied with
proceeding in attachment, tried before *Bynum, J.,* at No-
vember Term, 1898, of the Superior Court of CUMBERLAND
County.

There was no dispute about the debt. The question was
as to the validity of the attachment, and that turned upon
the legality of the deed of assignment from R. M. Nimocks
to W. S. Cook, especially in reference to the sufficiency of
the schedule of preferred debts filed by Nimocks; as to this
the following issue was submitted:

124—27

Was a duly sworn schedule of preference filed by defendant Nimocks in the office of the Clerk of Superior Court of Cumberland County, and is such schedule in compliance with the laws of North Carolina regulating assignments?

The alleged defect was the insufficiency of the description of some of the preferred debts in not stating the consideration, and the plaintiffs contended if any of them were invalid the defect vitiated the whole, and subjected the property to their attachment.

The defendants introduced no evidence. The Court instructed the jury, if they believed the evidence, to answer the issue, "No," which they did. Judgment was rendered in favor of plaintiffs for their debt; also vacating the defendants' deed of assignment and sustaining the attachment. Defendants excepted and appealed.

*Mr. H. L. Cook,* for defendants (appellants).
*Mr. H. McD. Robinson,* for plaintiffs.

DOUGLAS, J. The main object of this action is to set aside an assignment made by the defendant Nimocks to the defendant Cook, on account of an alleged defective schedule of preferred debts; and in the present status of the case this seems the only question necessary for our consideration. The issues were submitted and answered as follows:

1. Is the defendant Nimocks indebted to the plaintiff Brown & Co. (incorporated) by virtue of the deposit made in trust with him by it, and if so in what sum? Ans Yes; $1,242.68 and interest on $1,225 from August 6, 1897.

2. Was a sworn schedule of preferences filed by defendant Nimocks in the office of the Clerk of the Superior Court of Cumberland County, and is such schedule in compliance with the laws of North Carolina regulating assignments? Ans. No.

By the consent of the parties the Court answered the first issue as above, and the Court instructed the jury to answer the second issue, "No" if they believed the evidence. There were two distinct questions in the second issue, one of fact as to the actual filing of the schedule and the other of law as to its sufficiency when filed, which might have tended to confuse the jury if left to their determination. As the issue was answered by the Court and the schedule is admitted to have been filed, his Honor evidently intended to pass only upon its sufficiency. It is well settled in this State that the failure to file with the Clerk of the Superior Court within five days after the filing for registration of the deed of assignment the verified schedule of preferred debts required by the Act of 1893 renders the assignment absolutely null and void. *Bank v. Gilmer,* 116 N. C., 684; S. C. ,117 N. C., 416, 426; *Frank v. Heiner, Ibid,* 79, 83 ; *Glanton v. Jacobs, Ibid,* 427; *Cooper v. McKinnon,* 122 N. C., 447, 449.

The questions now before us are: (1) Does the schedule as filed comply with the terms of the statute by sufficiently stating the nature of each preferred debt? and (2) Does the failure to sufficiently specify some of the debts vitiate the entire assignment, or only destroy the preference as to these particular debts?

Section 1, Chapter 453, of the Laws of 1893, is as follows: "That upon the execution of any voluntary deed of trust or deed of assignment for the benefit of creditors, all debts of the maker thereof shall become due and payable at once; a schedule of all preferred debts shall be filed under oath by the assignor in the office of the Clerk of the Superior Court of the County in which such assignment is made, *stating the name of the preferred creditors, the amount due each, when the debt was made, and the circumstances under which said debt was contracted,* and said schedule shall be filed within five

BROWN *v.* NIMOCKS.

days of the registration of such deed of assignment." That part italicized by us explains itself except the last clause, which we think refers to the nature of the debt and its consideration, as, for example, taxes, money borrowed, medical attendance, or merchandise, as the case may be. We have, then, as essential requisites, the name of the creditor, and the amount, date and nature of the debt. In their absence the debt remains a debt, but has no preference. If the debtor is bound only as surety, it should be so stated, as his creditors might have some rights of subrogation or contribution. The object of the Act was to give the creditors a convenient opportunity of ascertaining the nature of the preferences, and to put such information, verified by the oath of the assignor, in such form and place as to be equally accessible to all. While it is entitled "An Act to Prevent Fraudulent Assignments," it had no purpose to prevent honest assignments, nor indeed, to throw around them any unnecessary restrictions, but simply to give those most deeply interested a reasonable opportunity of ascertaining the truth. If a creditor is prevented from making his just debt in the presence of sufficient property of the debtor, he should be told the reason. The assignor is not required to file his schedule during the preparation of his assignment when every minute may count in the race with creditors, but is given five days thereafter during which he can prepare it at leisure and in safety. We do not think that such provisions are unreasonable, and we feel it to be our duty to give them such a reasonable construction as will effectually carry out their beneficial purpose.

The schedule gives the names of all the preferred creditors and the amount of each debt, but in many instances it gives neither the date nor the consideration of the debt, both of which are essential. Thus we think that the first preference as follows: "George A. Overbaugh, cash borrowed on my

note of April 26, 1897, for benefit of Thornton Dry Goods Co., $5,000," is sufficient, as it gives the name, amount, date and consideration, as well as the name of the beneficiary. It is true that in cases of renewal the date of the original debt should also be given, but in the absence of any further explanation the date of the note is presumed to be the date of the creation of the debt.

On the contrary, the second preference, to "M. D. Geddie, amount to his credit on open ledger account, $1,200," is not sufficient, as it gives neither date nor consideration. If it in-. volved a long account the items need not be given, but the assignor could at least state the date and character of the items in general terms, such as "amount or balance due on open ledger account for dry goods (or groceries or both) bought on the first day of May, 1876 (or between the first day of May and the first day of July)," as the case may be. This would give the creditor sufficient information as to the character of the transaction to enable him to investigate it if he saw fit. It may be said that the creditor could apply to the assignee to examine the ledger and thus obtain such additional particulars as he wished; but he might have done that without the schedule and before the passage of the Act. Surely the statute means something, and that meaning we must take from its plain and unequivocal words. Where the debt is represented by a note, its consideration should be given the same as an open account, such as borrowed money, merchandise or whatever it may be. The mere statement that a party holds a note of a given date and amount does not "state the circumstances under which said debt was contracted." The defect is so much greater when the date also is omitted, as in the preference to "H. W. Howard, balance due on my note of $5,000, $3,500." The mere form of words is immaterial, but there must be a substantial compliance with the statute.

It is needless to go through the entire schedule, as the debts are easily distinguishable under the above rules; but it is just to the plaintiff to say that in our opinion its debt is sufficiently stated, although perhaps it would have been more fully in accordance with the spirit of the statute if the title of the attachment proceedings had been given.

The only remaining question is whether those preferences insufficiently stated vitiate the entire schedule. We think not. Those failing to comply with the law are simply eliminated from the schedule, leaving it in full force as to the others, and therefore of sufficient validity to support the assignment.

While enforcing the statute in its letter and spirit, we do not intend to place the ban of judicial construction upon honest assignments, which are fully recognized if not favored by our laws, or to base their invalidity upon mere technicalities. The right to convey in trust is a part of the *just disponendi* more or less inseparable from the nature of property, while the right to prefer is simply an extension of the right to pay. Debts are not all of equal dignity, either legal or moral, and this fact is recognized not only by common consent but by the law itself, as instanced in statutes prescribing the order of payment in administrations and bankruptcy. Frequently the moral dignity of the debt is greater than its legal status and can be given its effect only by the assignor. Under such circumstances we do not think that an honest and perhaps meritorious creditor should be made to suffer from the bad faith or mere carelessness of the assignor in not sufficiently describing a debt with which his own has no connection whatever. The principle is so clearly stated by Chief Justice Pearson in *Brannock v. Brannock,* 32 N. C., 428, that our own views can best be given by a full citation. The Court says: "The operation of the deed was to pass the legal estate with

a *separate declaration of trust* for each of the debts therein enumerated. There can be no reason why the declaration of trust in reference to one debt may not stand and the declaration of trust in reference to another be held void. So if a deed contains a declaration of trust in favor of several debts, one of which is feigned, and there be no connection or combination between the creditors to whom the true debts are due and the grantor or person for whose benefit the feigned debt is inserted, there can be no reason why the declaration of trust in favor of the true debts may not stand and the feigned debt be treated as a nullity. Here, the *consideration* which raised the issue, for the purpose of the conveyance, is merely nominal. The debts secured are distinct, due to different individuals, and in no way connected with or dependent on one another—the deed is valid so far as respects the good debts. It would be unreasonable and defeat the object of deeds of trust if they are to be declared void and honest creditors deprived of their security for debts because the debtor, without their knowledge or concurrence, may insert an usurious or feigned debt."

This disposes of the attachment proceedings, all of which were begun after the assignment. As the assignment conveyed to the assignee all of Nimocks' interest in the property, there was nothing left for the plaintiff to attach.

For error in instruction of the Court on the second issue, a new trial is ordered.

New trial.