J. D. ODOM, trustee, et al. v. W. H. CLARK, F. J. NEVILLE and P. V. RANDOLPH, trustee.

(Filed 26 February, 1908).

1. Conditional Sale—Chattel Mortgage—Form—Verbal Agreement.

A chattel mortgage is a sale of personal property on condition, as security for the payment of a debt, is now (since 1792) effective between the parties when verbally made, requires no seal, writing or special form of· words, and the question is one of agreement between the parties.

2. Same—Burden of Proof.

The burden of proof, by the greater weight of evidence, is upon the party relying upon the establishment of a verbal chattel mortgage, when the effect is not to change or alter a written instrument.

3. Same—Evidence—Questions for Jury.

Evidence is sufficient to sustain the verdict of the jury upon whether a verbal chattel mortgage had been given, which tends to show an agreement that until the mortgage contemplated was written the plaintiff should have a verbal mortgage on the property, and that he advanced credit on the strength thereof; that defendant afterwards promised that the papers would be executed and assured plaintiff that "everything would be all right."

4. Same—By One Partner—Partnership.

One partner may give a verbal agreement, in effect a chattel mortgage, on partnership goods to secure a partnership debt.

5. Same—Growing Crops—Between Parties—Revisal, 2052.

Parties, as between themselves, may by contract constitute and deal with growing crops as personalty; hence, except as it may affect creditors and third persons, a verbal mortgage on growing crops is valid between the parties when it does not extend for a second, or greater number of years. Revisal, 2052, relating to the priorities of agricultural liens has no application in the absence of claim for its especial priorities.

6. Purchasers for Value—Pre-existing Debts—Deeds and Conveyances—Registration.

Holders of property to secure pre-existing debts are purchasers for value within the meaning of Revisal, 982, and it requires prior registration of other deeds of trust or mortgages to affect their interests as such.

ODOM v. CLARK.

### 7. Uses and Trusts—Mortgages—Assignments.

A deed of trust conveying practically all of grantor's property to secure existing debts will be considered an assignment, subject to the regulations of the statutes addressed to that question, and this result will not be changed because some small portion of his property was omitted, or because the instrument was drawn in the form of a mortgage, having a defeasance clause.

### 8. Assignments—Statutory Provisions—Compliance.

An assignment for benefit of creditors is void unless the formalities of Revisal, sec. 967 *et seq.*, are complied with as to filing schedules of preferred debts, or inventory of property, etc., and will be set aside at the suit of a creditor whose debt is not therein provided for.

### 9. Statutes—Repealing Statute Repealed.

The repeal of a statute repealing a former statute leaves the latter in force.

CIVIL ACTION, tried before *W. R. Allen, J.,* and a jury, at August Term, 1907, of the Superior Court of HALIFAX County.

There was evidence tending to show that, in January, 1903, defendants Clark and Neville executed to plaintiffs an agricultural lien, under The Code, sec. 1799 (Revisal, sec. 2052), for advances in making a crop that year on certain lands specified and described in the instrument, and to secure an amount for such supplies, not to exceed $3,500, with certain other indebtedness secured by said instrument; that said supplies were regularly and properly furnished by plaintiffs, as required by the contract, until the specified limit was reached; that, on or about 1 May, defendants needing and desiring further supplies for their operations during the current year, the parties bargained together for further advances, to be secured by an additional agricultural lien, and, while this instrument was being prepared and its terms agreed upon, it was agreed between the parties that plaintiffs should continue to make advances and have a verbal mortgage on all the property embraced in the original lien and on some other property which had been advanced by plaintiffs under the same; that, under

146—35

this verbal agreement, plaintiffs made further advances, to the amount of $2,600, which sum is due and unpaid; that this arrangement continued, the defendants Clark and Neville giving assurances that the additional written lien would be formally executed, until 28 September, 1903, when plaintiffs ascertained that Clark and Neville had executed to Joseph C. Randolph two deeds of trust—one to secure a debt of $161.67 to Randolph Supply Company and for advances to be made by it for the current year 1903 to an amount not to exceed $800, and the second to secure a large amount of pre-existing debts due from Clark and Neville to parties other than plaintiffs; that these deeds were duly acknowledged and registered in the proper county on 29 September, 1903, and included all the property named in the written and alleged verbal mortgage to plaintiffs, and also other property of Clark and Neville—all that they owned, so far as appears—reserving from same the personal property exemptions to each of the grantors.

There was allegation, with evidence on the part of plaintiffs, tending to show that the deeds of trust to Joseph Randolph were executed with actual intent on the part of the grantors to hinder, delay and defraud plaintiffs of their claim, and it was in that connection admitted that neither the trustee in said deeds nor the beneficiaries thereunder had any knowledge or notice of such fraudulent intent.   There was evidence on the part of the defendants tending to show that no verbal mortgage was ever given to plaintiffs for further advances, and also, in explanation of their delay in executing the additional written lien, to the effect that plaintiffs had made overcharges in their accounts and insisted in exacting an unreasonable stipulation in reference to the second lien demanded. There was further evidence tending to show that the instruments executed to Joseph Randolph, trustee, were made in good faith on the part of the grantors; that the debts due therein were *bona fide,* and that the Randolph Supply Com-

pany had made necessary advances to defendants Clark and Neville to aid them in making their crop.

From the verdict of the jury and admissions of the parties it was established that the debt remaining due and unpaid to plaintiffs by reason of advancements under the original written agricultural lien was $900; that a verbal mortgage was given plaintiffs by defendants Clark and Neville on all the property included in the written lien and on some additional property, and that the amount advanced and secured by said mortgage, and still due thereon, was $2,600; that the value of the property included in the mortgage and wrongfully withheld by defendants was $4,192.97. It was admitted that the Randolph Supply Company had made advances to the amount of $727.18, and it was found by the jury that the Randolph deeds were executed with intent to defraud plaintiffs on the part of Neville and Clark, and it was admitted, as stated, that neither the trustee nor the beneficiaries had any notice of such intent.

It was also established that no schedule of preferred debts, or inventory of property, or other formalities required by the Acts of 1893, ch. 453 (Revisal, sec. 967 *et seq.*), in reference to assignments for the benefit of creditors, had been complied with by the trustee of the Randolph deeds.

On the facts admitted and established by the verdict the court gave judgment in favor of plaintiffs against Clark and Neville for $3,500 and interest, the amount shown to be due, and adjudged that they should recover the property withheld, to-wit, $4,192.97, less $727.18, the amount admitted to have been advanced by the Randolph Supply Company, retaining the cause for further investigation in case the property was shown to have deteriorated in value while held by defendants under a replevy bond. Defendants excepted and appealed.

*W. E. Daniel* and *Claude Kitchin* for plaintiffs.

*Day, Bell & Dunn, Murray Allen* and *E. L. Travis* for defendants.

HOKE, J., after stating the case: The Court is of opinion that this cause has been correctly tried, and that the merits of the controversy have prevailed. It was urged against the validity of plaintiffs' claim, or that portion of it which must rest for its security upon the alleged verbal mortgage:

1. That no such mortgage was, in fact, given as an executed contract.

2. That if there was such contract, it was established under an erroneous charge as to the *quantum* of proof, which defendants contend should be "clear, strong and convincing."

But neither objection can be sustained.

A chattel mortgage is properly defined as a conditional sale of personal property as security for the payment of a debt or the performance of some other obligation. And in the third issue his Honor properly charged the jury: "No special form of words is necessary for a verbal mortgage. The question of fact for you to decide is, Was there an agreement between Clark and Neville, or either of them, with Odom, that the property and crops included in the deed of trust of 1 January, 1903, to Odom, should be security for advances to be made by the Rocky Mount Supply Company in excess of the amount specified in said deed? Have plaintiffs satisfied you, by the greater weight of evidence, that there was such agreement?" etc. And, further: "As I have instructed you, the burden is on the plaintiffs to satisfy you, by the greater weight of evidence, that the defendants did give the Rocky Mount Supply Company the verbal mortgage, as alleged."

The jury were thus directed to inquire and determine as to the existence of an executed verbal mortgage, and the evidence of plaintiffs tended to support the charge as given. Thus, the witness Odom, after saying that he notified defendants that the amount specified in the written lien had been reached, and that they would have to execute another written one, testified: "And they agreed to do this, and told me to fix the papers to that effect and send to them, and they would execute. It was

·ODOM v. CLARK.

agreed between us that, until the papers were fixed, we were to have a verbal mortgage on all the property, crops, etc." And again, on a later occasion: "Clark, again, at that time promised me that the papers would be executed and that everything would be all right, and said I needn't feel any uneasiness, as I had a verbal mortgage on everything. He assured me that we would be all right, as we had a verbal mortgage on everything, and kept on ordering (supplies) and we kept on shipping." According to this evidence, the parties were, as to the verbal mortgage, clearly speaking of it as an executed agreement, and the jury, in response to the third issue, has so established it. Nor is there any reason that occurs to us why such a contract should be required to be established by clear, strong and convincing proof, rather than by the greater weight of testimony, the rule as stated in the charge.

The authority relied upon by defendants (*Shelburne v. Selsinger,* 52 Ala., 92) seems to have been as to an executory agreement to make a chattel mortgage. It is termed an equitable mortgage by the reporter, and the decision has been interpreted as a ruling on an executory agreement in a textbook of recognized authority. Jones Chattel Mortgage (4th Ed.), sec. 3. But in either event there seems to be no good reason for such a requirement as to the *quantum* of proof contended for by defendants in cases of this character, and we do not think it comes within the principle established by the weight of authority. When a claimant is seeking to engraft a trust on a written instrument, or to annex a condition to one, or establish a mistake therein, he is required to make good his allegation by clear, strong and convincing proof. In such case the effect of his position is to alter or change a written instrument, which should be upheld, unless clearly impeached, as shown in *Harding v. Long,* 103 N. C., 1, and other like cases, and a similar ruling obtains in written certificates of officers as to their official action, as in *Leonard v. Lumber Co.,* at the last term. But no such conditions exist

in the case we are considering. A chattel mortgage is not required to be under seal. It is not, as we shall endeavor to show, required to be in writing. There is no effort here to impeach or change any written paper, or to challenge any official action. It is just an open question, to be determined by testimony, and, to our minds, under ordinary circumstances, it is proper that it should be determined, as such questions in civil suits usually are, by the greater weight of evidence.

Again, it is insisted that if the verbal mortgage should be properly established the same is not a valid lien—first, because it was executed by only one of the partners; second, because it was not in writing. But the authorities are against defendants on both of these positions. As a matter of fact, while Clark chiefly attended to the business, and there is evidence of several declarations made by him alone admitting the existence of a verbal mortgage, the testimony of Odom (record, p. 24) seems to indicate that, when this mortgage was made, both parties were present and assented; and if it were otherwise the objection would not avail defendants, for it is accepted doctrine that one partner may execute a chattel mortgage on partnership goods to secure a partnership debt. Jones Chattel Mortgage (4th Ed.), sec. 46. And this principle has been approved by express adjudication with us. *Pipe and Foundry Co. v. Wollman,* 114 N. C., 178-185. And the second objection, that the mortgage is not in writing, is equally untenable. There are decisions which hold that a chattel mortgage must be in writing, but these cases will, we apprehend, be found to rest on the inhibitive provisions of seventeenth section, 29 Charles II., the English statute of frauds, by which sales of goods to the value of £10, or upwards, are required to be in writing, unless a part of the goods are delivered, or earnest given to bind the bargain. But while this statute was at one time declared to be the law of this State *in toto* (Laws of North Carolina, 1749, published in State

Records, Vol. XXIII, p. 324), it has not been in force here since 1792, except to the extent that its different provisions have been especially re-enacted. See Martin's Collection of British Statutes, in force in the State in 1792, and Potter's Revisal, Vol. I, p. 85. This section referred to (section 17 of the English statute) never having been re-enacted, the principles of the common law are applicable and controlling (*Foy v. Foy*, 3 N. C., p. 131 [296]; *Pittman v. Pittman*, 107 N. C., 159-163), and are to the effect that a valid mortgage of personalty can be made without writing. Jones on Chattel Mortgages, sec. 2. Accordingly, it has been held with us that a chattel mortgage in parol is good between the parties without writing. *McCoy v. Lassiter*, 95 N. C., 88. Nor is it required that this lien asserted by plaintiffs should be in writing, by the statute providing for agricultural liens. Revisal, sec. 2052. True, the statute requires that a lien executed and to be effective under its provisions should be in writing and registered, but this is only required in order to make the claim good as against creditors and third persons, and to entitle the holder to the superiority given by the statute over all other liens, except those of the landlord and laborer. The statute, however, being only affirmative in terms, does not and was not intended to prohibit agreements otherwise valid and binding as between the parties. Nor is writing required to make the lien binding on growing crops. While we have held that such contracts as to crops for a second or greater number of years are void from reason of public policy, "because," as said by the present Chief Justice, in *Loftin v. Hines*, 107 N. C., 360, "they may operate to oppress labor and to diminish production and the general prosperity dependent upon it," our decisions uphold them as to the next succeeding or current year. *Hahn v. Heath*, 127 N. C., 27; *Loftin v. Hines, supra*. And it is also a generally recognized doctrine that parties, as between themselves, may by contract constitute and deal with growing crops as personalty.

Ewell on Fixtures (2d Ed.), pp. 370, 371, 372. The plaintiffs, then, having established in their favor a valid lien as against defendants Clark and Neville, are entitled to the property, unless the claimants under the two deeds of trust to J. C. Randolph have a superior right.

It will be noted that the advancements of supplies made to these grantors by the Randolph Supply Company have all been paid, or a payment is directed and provided for in the judgment as rendered, and the claimants, who now object to the judgment, are holders of pre-existing debts provided for in these deeds. It has been held with us that such debts are sufficient to constitute the holders purchasers for value, within the meaning of our registration laws. *Brem & McDowell v. Lockhart,* 93 N. C., 191, cited with approval in *Moore v. Sugg,* 114 N. C., 292. And under these laws (Revisal, sec. 982) defendants would hold the property, if the deeds themselves are good.

The jury have found that they were made with intent to defraud plaintiffs, this intent, however, being confined to the grantors, and there are many exceptions appearing in the record as tending to impeach the verdict on these issues. We find, however, that it is not necessary to consider or determine them, because we are of opinion that these deeds are avoided by decisions of the Court construing the statute of 1893 (chapter 453) touching assignments. Revisal, sec. 969 *et seq.; Brown & Co. v. Nimocks,* 124 N. C., 417; *Bank v. Gilmer,* 116 N. C., 684; *same case* reaffirmed, 117 N. C., 416.

In these last cases it was, in substance, held that, where an insolvent man makes an assignment of practically all of his property to secure one or more pre-existing debts, such an instrument will be considered an assignment, subject to the regulations of the statutes addressed to that question, and that this result will not be changed because some small portion of his property shall have been omitted or because the instrument may have been drawn in the form of a mortgage having a

defeasance clause.    In the first of these cases it is held:
"While the act of 1893 (chapter 453) does not prohibit *bona
fide* mortgages to secure one or more pre-existing debts, yet,
where a mortgage is made of the entirety of a large estate for
a pre-existing debt (omitting only an insignificant remnant
of property), the mortgage is in effect an assignment for the
benefit of creditors secured therein, and is subject to the regu-
lations prescribed in said act of 1893" (sixth headnote, 116
N. C., 685) ; "and to hold otherwise," said *Avery, J.,* "would
be to nullify the act."    On a petition to rehear, the decision
was reaffirmed and announced in the same terms.

It is insisted for the defendants that these decisions should
not be held as controlling here, because in them the debts
named amounted to more than $49,000, while the property
was only $25,000, thus making the clause of defeasance in the
instrument of no significance.    But, while this large differ-
ence between the debts and the value of the property conveyed
is referred to by *Justice Furches* in his opinion, the difference,
or the amount of it, is not made of itself a controlling fact in
the case, and the principle announced in these decisions will
extend to and include the deeds under which defendants
claim.    The grantors were insolvent.    They conveyed all of
their property, so far as appears, to secure a large number of
pre-existing debts, omitting the debt due plaintiffs, and the
interest of the grantors in the property conveyed was insuffi-
cient to pay the claims and their other indebtedness.    Under
these decisions, therefore, the deeds in question are subject, as
stated, to the regulations established by the law in reference
to assignments, and, these not having been complied with, the
deeds are void.

The objection made, that the statute (chapter 453, Laws
1893) was repealed by chapter 466, Laws 1895, and this
condition remained until the former statute was re-enacted
by Revisal, is without force.    The second statute did not
repeal the former law, except as to a certain class of assign-

ments, and the repealing statute was itself repealed at the following session (chapter 14, Laws 1897), from which time the original act has been in force. *Brinkley v. Swicegood,* 65 N. C., 626; *Hughes v. Boone,* 102 N. C., 137; *State v. Goulding,* 131 N. C., 715.

There is no error in the proceedings below, and the judgment as rendered is affirmed.

No Error.