## POWELL BROTHERS v. McMULLAN LUMBER COMPANY.

### (Filed 21 September, 1910.)

**1. Corporations—Acceptance—Certificates—By-laws.**

By signing and recording the articles of incorporation three or more persons become a body corporate under the Code, sections 677-8, and it is not necessary for the exercise of such powers as are conferred by statute on corporations, that the one so formed shall issue certificates of stock or adopt by-laws. Revisal, sections 1137-1146.

**2. Corporations—Officers and Directors, Loans from—Solvency.**

The officers and directors of a solvent going corporation may loan the company money secured by mortgage on its property.

**3. Same—Present Consideration.**

The officers and stockholders of a corporation may duly authorize the execution of a mortgage on its property to two of their own number to secure a loan of $6,000 made by them to the incorporation, the stockholders and directors therein being only three persons, it appearing from plaintiff's own evidence that the value of the property was approximately $12,000, that all the existing debts at that date, except a small debt of $40, had been paid, and nearly half the amount of the notes secured were for a present consideration.

**4. Corporations — Conveyances—Total Property—Solvency—Assignments—Filing of Schedules, etc.**

It is not necessary to the validity of a corporation's mortgage made to two of its creditors of its entire property that the schedules of preferred debts be filed under oath, and inventory filed, under Revisal, sections 967-968, when it appears that the corporation was not insolvent, and that the consideration for the notes, secured was a present one.

**5. Same.**

It appearing in this case that the value of the corporate property was approximately $12,000; the amount of the notes secured by the mortgage on the entire property, $6,000, half given for a pre-existent and half for a present consideration; all debts then paid except $40, owed to an unconcerned creditor, the requirements of Revisal, sections 967-968, were held inapplicable, and upon such facts there is no *prima facie* case made out, or presumption of insolvency. *Clements v. Cozart* cited and distinguished.

**6. Deeds and Conveyances—Assignments—Fraud—Invalidity—Inter
Partes.**

A voluntary conveyance declared invalid for not complying
with the provisions of Revisal, sections 967-968, is not only void
as to *bona fide* unsecured creditors, but *inter partes;* and hence
it would be unnecessary for such creditors to show fraud in its
procurement in order to set it aside.

APPEAL by plaintiffs from *Ferguson, J.,* at Spring Term,
1910, of CHOWAN.

The plaintiffs, as partners, sued the McMullan Lumber Com-
pany, a corporation, M. H. White, E. V. Perry and White &
White ·Company, corporation. The facts alleged are substan-
tially as follows: In August, 1905, the McMullan Lumber Com-
pany was chartered under the general corporation law of the
State, with three stockholders, S. W. McMullan, subscriber for
97 shares of the capital stock, E. V. Perry for two shares and
M. H. White for one share. There were no other stockholders.
On 16 September, 1905, the stockholders met and elected three
directors, White, Perry and McMullan. McMullan was elected
president, and he was also elected general manager. Perry was
elected secretary and treasurer. In November, 1905, the direc-
tors met, being also all the stockholders, to consider the affairs
of the corporation.  It was then indebted, for cash advanced, to
White and Perry in sums aggregating $3,475. The corporation
bought and took deed from Perry for real estate necessary for its
business to the value of $2,500; and White and Perry advanced
then the further sum of $125, making a total indebtedness to
them of $6,000—$3,000 to each. The corporation duly author-
ized the execution of two notes to be executed of $6,000—$3,000
to each—and to secure their payment authorized a mortgage to be
executed on substantially all its property—real estate, buildings
and machinery. The approximate value of this property was.$12,-
500. The corporation owed other debts than to White and Perry,
but all of these have been paid except a debt of $40 and were paid
before this suit was brought. The holder of this small debt seems,
according to the record, to manifest no concern about it. A deed
of trust, instead of a mortgage, securing the two was duly exe-
cuted and promptly recorded. Some six months thereafter the

plaintiffs, being lumbermen, began to deal with the corporation, selling it lumber and taking its notes and acceptances, to the aggregate amount, as established by the verdict, of $1,510. After the meeting in November, 1905, there was no other meeting of the directors or stockholders, the business having been left to the sole management of McMullan, the president and general manager, who was regarded as a competent and reliable business man. No certificates of stock were issued and no by-laws were adopted. In December, 1906, there was a sale by the trustee, named in the deed of trust, pursuant to its terms, to satisfy the two notes secured therein, both of them at that time being owned by White. White purchased for the amount of the two notes, $6,000 and subject to taxes, $126, and a prior lien in favor of the American Woodworking Company, for the sum of $1,336; White subsequently sold to the White & White Company for $7,500. Upon the foregoing facts and the further fact that White said to McMullan before the sale by the trustee, that he, White, would buy the property at the sale if it did not bring more than his debt, and that he and McMullan would then run the business. The plaintiffs contended that the mortgage or deed of trust to secure the notes to White and Perry was void because (1) made to secure largely pre-existing debts and covering substantially all the porperty of the corporation, and the requirements of sec. 967, Revisal, were not observed by the assignor, (2) made by the corporation to two directors, necessarily by their own votes, and that the deed was fraudulent, as the evidence sustaining the above facts tended to prove. At the conclusion of the evidence of the plaintiff, the defendants, White, Perry, and White & White Company, moved for judgment as of nonsuit. The motion was allowed and plaintiff appealed. Judgment was rendered against the McMullan Lumber Company for the debt and interest and costs, and of nonsuit against the plaintiffs in favor of the other defendants.

*W. M. Bond* and *W. M. Bond, Jr.,* for plaintiffs.

*Pruden & Pruden, Chas. Whedbee, J. C. B. Ehringhaus* and *E. F. Aydlett* for defendants.

MANNING, J., after stating the case. The contention that the McMullan Lumber Company was not a corporation is settled by the decision of this Court in *Benbow v. Cook,* 115 N. C., 324, where it is said: "Having complied with the requirements as to the form of the articles of agreement and caused the proper record to be made, the three persons named as sole corporators become a body politic for the purposes set forth in the agreement. Code, secs. 678, 679. When corporate powers are granted by a special, instead of a general act of the Legislature, there must be evidence of acceptance by the corporators and compliance with all the conditions precedent prescribed by law, in order to show affirmatively that the corporation is lawfully organized. But in our case every corporator affixed his hand and seal to the articles of agreement recorded, and by such signature and the recording of the instrument, became invested with all the powers which it was contemplated by law to confer in such cases. Code, sec. 679. Private corporations are formed when the necessary contractual relations are created between the persons clothed by law with the powers of a body politic. 1 Morawetz, 24." In addition to the conclusive effect of this authority, the plaintiffs allege in the first paragraph of their complaint, "that the McMullan Lumber Company is a corporation, having become such on or about 25 August, 1905," and that plaintiffs, beginning in June, 1906, had many dealings with the corporation. The fact that the McMullan Lumber Company was a corporation, and its continued existence as such would seem to be placed beyond controversy in this action; the fact that the corporation did not issue certificates of stock did not affect its creation or existence as a corporation. "It is the act of subscribing, or the registry of the stockholder's name upon the stock book of the company, opposite the number of shares for which he has subscribed, which gives him his title thereto, and that the certificate neither constitutes his title nor is necessary to it, but only a memorial of it." 10 Cyc., 390; Womack's The Law of Private Corporations, sec. 267. If certificates are not necessary to membership in a corporation, it would seem certainly clear that they would not be necessary for the existence of the corporation itself, nor does sec. 1137, Revisal, prescribing the requirements for

the formation of a corporation, prescribe that certificates of stock shall be issued. Nor did the failure of the corporation to adopt by-laws destroy or impair its existence as a corporation. In 10 Cyc., 353, *Judge Thompson* says: "Where the governing statute, in express terms, confers upon the corporation the power to adopt by-laws, the failure to exercise the power will be ascribed to mere non-action, which will not render void any acts of the corporation which would otherwise be valid."

What the by-laws of a corporation may determine and contain are set forth in sec. 1146, Revisal.

The question most stressed in the brief and oral argument before us is the invalidity of the deed of trust to secure the notes of White and Perry, growing out of their relationship to the corporation; that the larger part of the amount secured was a pre-existing debt; that there were other creditors at that time; that the corporation conveyed in the deed of trust substantially all of its property, and the assignor failed to file the schedule required by sec. 967, Revisal, and the trustee failed to file the inventory required by sec. 968, Revisal. The plaintiff's evidence showed that the corporation was not insolvent at the time the deed of trust was executed; that at that date the property of the corporation was worth approximately $12,000; that all its other debts existent at that date, except a small debt of $40, had been paid; and nearly half the amount of the notes secured was not a pre-existing debt, but a present consideration of equal value; that the stockholders and directors authorized both the note and the security to be given. These facts clearly distinguish this case from *Edwards v. Supply Co.,* 150 N. C., 171; *Hill v. Lumber Co.,* 113 N. C., 173; *Electric Light Co. v. Electric Light Co.,* 116 N. C., 112; *Graham v. Carr,* 130 N. C., 274; *Holshauser v. Copper Co.,* 138 N. C., 251; *Bank v. Cotton Mills,* 115 N. C., 507. That these facts are determinative of the validity of the mortgage or deed of trust is stated with great clearness by *Chief Justice Clark* in *Edwards v. Supply Co., supra:* "It would have been otherwise if, at the time the money was authorized to be borrowed, the company had authorized the mortgage to be executed to secure its officers, who agreed to sign the note as endorsers. In such case the money received would have balanced

the debt secured, and would have paid off that amount of prior debts to others, or would otherwise have aided the business of the company. Such arrangements are often necessary, and when *bona fide* are valid. *Banking Co. v. Lumber Co.,* 91 Ga., 624, cited and approved; *Hill v. Lumber Co.,* 113 N. C., 179." The wholesome and just doctrine which the above cases clearly settle, is that the director of an *insolvent corporation* who is also a creditor, cannot take advantage of the information which he has obtained of the affairs of the corporation to protect himself to the injury of the other creditors, or secure an advantage over them; but it has not been decided that the officers of a going, solvent corporation cannot aid it with loans of money and take security therefor. Such a doctrine would destroy corporate growth and seriously impair business activity.

It is also insisted by plaintiff that the deed of trust is invalid because, conveying substantially all the property of the corporation and securing only two of its creditors, no schedule of the preferred debts was filed under oath by the corporation, and no inventory filed by the trustee, as required by secs. 967 and 968, Revisal. These statutes have been considered by this Court in the cases of *Bank v. Gilmer,* 116 N. C., 684; *ibid.* (on rehearing), 117 N. C., 416; *Glanton v. Jacobs,* 117 N. C., 427; *Cooper v. McKinnon,* 122 N. C., 447; *Pearre v. Folb,* 123 N. C., 239; *Brown v. Nimocks,* 124 N. C., 417; *Taylor v. Lauer,* 127 N. C., 157; *Odom v. Clark,* 146 N. C., 544; and it has been held "that where an insolvent man makes a mortgage of practically all of his property to secure one or more pre-existing debts, such an instrument will be considered an assignment, subject to the regulations of the statutes addressed to that question, and the result will not be changed because some small portion of his property shall have been omitted or because the instrument may have been drawn in the form of a mortgage having a defeasance clause. In the first of these cases *(Bank v. Gilmer, supra)* it is held: 'While the act of 1893 (chapter 453) does not prohibit *bona fide* mortgages to secure one or more pre-existing debts, yet, where a mortgage is made of the entirety of a large estate for a pre-existing debt (omitting only an insignificant remnant of property), the mortgage is, in effect, an assignment for the bene-

fit of creditors secured therein, and is subject to the regulations prescribed in said act of 1893.' " It seems necessary from these decisions, and essential for the application of the act of 1893, secs. 967 and 968 of the Revisal, that the grantor should be insolvent, and the debts secured should be pre-existent to the mortgage or assignment, and that there should be other existing creditors. If these essential conditions do not concur, then the mortgage or deed of trust could not be regarded as subject to the requirements of the sections of the Revisal above referred to, though the property conveyed may constitute substantially all of the grantor's estate. In the present case the plaintiff's evidence showed, and there was no evidence offered for the defendants, that the corporation was not insolvent; that the debts secured were partly pre-existent and partly for a present consideration of nearly equal amount, and that while there were other creditors existing at the time, they were all paid except one whose debt amounted to $40, and this creditor seems to manifest no interest in that small amount. He is wholly inactive. The plaintiffs, however, contend that the fact of the existence, at the date of the deed of trust, of other debts than the secured debts, though they may have been subsequently paid, and especially the existence of the unpaid $40 debt, enables them to have the deed of trust declared void and to bring the property therein conveyed within their reach under the doctrine declared by this Court in *Clement v. Cozart,* 112 N. C., 412. The doctrine of that case is thus stated at page 422: "The law is that a voluntary conveyance, where the grantor did not, at the time of the grant, retain property fully sufficient and available for the satisfaction of his then creditors, is fraudulent in law as to existing creditors. And if such conveyance shall be declared void at the suit of an existing creditor, all creditors, those existing at the execution of the conveyance, and also subsequent creditors, will be entitled to come in and participate in the fund arising from a sale of the property, subject to priorities and to the maxim *vigilantibus non dormientibus leges subveniunt."* In that case the conveyances were impeached, not only because they were voluntary, the grantor not retaining property fully sufficient and available for the satisfaction of his then creditors, but also because the

grantor had the actual fraudulent intent to hinder and delay his creditors. The deed of trust in the present case was not a voluntary deed, nor is there any evidence of any actual fraudulent intent and purpose. But if the conveyance under consideration fell under the condemnation of sec. 967, Revisal, or sec. 968, Revisal, as construed by this Court in the cases above cited, no more would be needed, for, as expressly determined in *Cooper v. McKinnon, supra,* such a deed would be void and invalid, not only as to creditors, but also *inter partes.* In that case the Court said: "The distinction suggested by the plaintiffs, that the assignment may be valid between the parties—that is, the assignor and assignee—and yet void as to creditors, cannot be maintained. This doctrine applies only to cases where the grantee takes the property for his own benefit exclusively, as a mortgage, or grantee in absolute conveyance. . . . If such a conveyance is in fraud of creditors, either actually or by construction of law, it may be set aside as to them; but until so set aside, it is valid between the parties. But a deed of assignment for the benefit of creditors is essentially different, and if such a deed becomes void as to creditors, its primary and essential purpose is defeated, and it is totally invalid. . . . In the case at bar, the first deed of assignment being void, the title of the property was still in the assignor, and was by him conveyed to his codefendant, Patterson, by the second deed of assignment, which is admittedly valid if not affected by the prior deed." In the case at bar, the plaintiff's evidence negatives the insolvency of the lumber company—a fact essential to the application of sec. 967 and 968, Revisal, unless we hold that the mere giving of a mortgage upon substantially all the mortgagor's property, to secure a past and present indebtedness nearly equal in amount raised, under the evidence in this case, a presumption of insolvency in fact at the date of the deed of trust, or made out such a *prima facie* case as required it to be submitted to the jury. Upon the evidence presented in this case, we cannot so hold. A different conclusion might be reached upon evidence presenting additional facts. The hardship upon the plaintiffs of losing their debt may be somewhat obviated by an inquiry, in a proper proceeding, as to the payment of the subscribed capital stock

of the corporation. If the subscribers have not paid in full their subscriptions, the unpaid subscriptions constitute assets for the payment of the debts of the corporation. After a careful examination of the authorities cited by the learned counsel of the plaintiffs, and the exceptions to the rulings of his Honor, we find no error and the judgment is

Affirmed.