Ruffin, Chief Justice.
 

 Ip November, 1837, the defendants, Edmundson and King, as partners in Merchandise, were indebted to the present plaintiff ip the sum of $1,000, and to the defendant Beasley, in the sum of $3,536
 
 23
 
 cts., and to sundry other persons in sums which, together, greatly exceeded the whole valu.e of their joint effects, and also of the separate effects of the two partners. Beasley, being informed of their insolvency by Edmundson, and applied to by him to take the stock of merchandize in discharge of his debt, readily assented to do so. But, when the parties met to carry into effect
 
 the
 
 agreement, Edmundson retracted his offer, but proposed, by an assignment to a trustee of sufficient property, to secure to Beasley one half of his debt for Beasley’s own benefit, if he, Beasley, would agree that the other half, which was also secured by the same assignment, should be in trust for the separate use of the wife of Edmundson and for his children. To this arrangement Beasley at first
 
 *181
 
 strenuously objected, and he urged Edmundson to secure to him, Beasley, his whole debt. But finding that Edmundson obstinately persisted in his refusal to secure the debt, or to secure any part of it, but upon the condition above mentioned, Beasley finally yielded to the proposition .of Edmundson. The parties were then about to secure the whole debt of $3,536 23 cts., in the name of Beasley, as if the same still belonged to him, and thus leave it to him to account with Edmundson, or his wife and children, for the one half-— But Edmundson again objected, and required the debt to be divided at once; and to that also Beasley yielded, as the only means of saving any part of his debt. Accordingly, a new note was executed to Beasley, for the sum of $1,768 12 cts., and also a note for the like sum of $1,768 12 cts., was executed to the defendant, Shield, who was selected by Edmundson, and agreed to receive and hold the money in trust for Edmundson’s wife and children, as stipulated between those other parties: but of this trust nothing appeared in the note or subsequent assignment; nor was it disclosed by any written instrument. Immediately thereafter, Edmundson executed a deed of trust to the defendant, Nichols, for all his property, both real and personal, and all debts due to him and his interest in the firm, in trust to receive and satisfy in the first place, a debt of $800, due to one Little; secondly, the said debt of $1,768 12 cts., due to Beasley; thirdly, the said sum due on the note to Shield; and then sundry sums due to other enumerated and classified creditors; among whom the plaintiff Kissam is not included. This deed was executed by Edmundson and Nichols only, and not by Beas-' ley or Shield; nor does it appear that any other creditor, besides those two, was privy to it.
 

 Within a short time thereafter, the plaintiff recovered a judgment for his debt against King and Edmundson, and issued a
 
 scire jadas,
 
 which was returned
 
 nulla bona;
 
 and then the plaintiff filed this bill against Edmundson and King, Nichols, Beasley, Shield, and the wife and children of Edmundson, and therein (submitting that the other debts mentioned in the deed, except those to Beasley and Shield, are true debts, and that the plaintiff is willing they should be
 
 *182
 
 paid) prays that the deed may be declared fraudulent and v°id) as against the plaintiff, so far as it purports to secure the said two sums to Beasley and Shield, and more especial-*n resPeci t0 debt to Shield, as being substantially a voluntary settlement by Edmundson, an insolvent debtor, on his wife and children; and that the plaintiff’s judgment may be satisfied out of the effects in the hands of Nichols, after paying off the debts mentioned in the deed, other than those two."
 

 A eonve - anee after “a¿ebtlr to ci'udren or in trust for void ¿gainst prior itors. l he case of O’CrawfordS." ciSTand7’ approved.
 

 There is no material difference as to the facts of the case, as they appear upon the bill and the answers. But Nichols, the trustee, has been examined as a witness upon the answers; and, upon his deposition, the case is very satisfactorily made out as above stated.
 

 If the sum secured to Shield for the benefit of the wife and children of Edmundson is, legally, to be regarded as a provision made for them by Edmundson himself, it is very certain that it cannot be raised out of his property, to the disappointment of his creditors; and the deed must be deemed ineffectual, so far, at the least, as it was intended as a security ^01’ sum<
 
 ^
 
 conveyance after marriage by a debtor to his wife and children, or in trust for them, is unquestionably fraudulent and void as against prior creditors, and that without regard to the amount of the debt, or the circumstances of the party making the conveyance.
 
 O’Daniel
 
 v.
 
 Crawford,
 
 4 Dev.
 
 197
 
 —Read v.
 
 Livingston,
 
 3 John. C. C.
 
 481—Jackson
 
 v. Se
 
 ward
 
 5 Cowen, 67. Much more is that true whe
 
 re
 
 there is an admitted insolvency of the settler, and the assignment includes all his effects.
 

 The only doubt that can be raised on the case is, whether this provision for Edmundson’s family be
 
 his
 
 bounty or that of
 
 Beasley?
 
 jUpon that question our opinion is, notwithstanding the form into which the transaction was put, that it is substantially and essentially a gift from Edmundson to his wife and children.
 

 The objection to that position or conclusion is, that Edmundson really owed the whole sum to Beasley; and the law allows a debtor to prefer one creditor before another; and it-is not material to the general creditors, whether the money?
 
 *183
 
 thus actually due, be paid to one person or to another. In other words, the argument is, that it was lawful for Beasly to do what he willed with his own; and, in giving'a part of his debt to Shield, or to Edmundson’s family, he did no wrong to the present plaintiff. This mode of presenting the case we admit to be plausible; but we think it more specious than sound. It is not denied that a creditor may, like a relation or any other compassionate person, give out of his debt, or any property belonging to him, a bounty to the family of his unfortunate debtor. But then it must be really a gift from the creditor, and not from the debtor himself. It is not cient that the sum secured was altogether a true debt. that were sufficient, then the deed would be good, though it secured half the debt to the creditor, and the other half to the debtor, or to a trustee for the debtor. But, certainly, in this *' last case the conveyance is fraudulent. Why? Because, as is mentioned in
 
 Twine’s
 
 case, although the debt be a trae debt, yet if the debtor is to have the benefit of it, or of the
 
 7 J 7
 
 property conveyed, to secure or satisfy the debt, the conveyanee is taken, not to have been made for the satisfaction of the debt, but, in truth and reality, for the ease and favour the debtor. Therefore, the whole is a nullity. It is not doubted that a creditor may lawfully be compassionate and bountiful to his debtor, by giving up a part of his debt, before he receives payment, or, after he has received his debt, by applying a part or the- whole of it in relief of the necessities of his indigent friend. But it must be the act of him who was the creditor, and independent of any arrangement between the debtor and creditor at the time or. as a part of the contract to convey property, either as a security or in apparent payment of the debt. Whatever benefit is secured, either openly or covertly, by such a deed to the maker of it, out of the effects conveyed by him, is obviously inconsistent with the professed purpose of conveying to satisfy or. secure the debt to the creditor; and, for that reason, is
 
 mala fide
 
 and void.
 

 ^a^outof a debt due any properbelo"g" Ifgiveaboun-ÍLiiiy of b^t ¡£b^it be a TOluatfirv act not coerced oi/norebt_ made tbe price of any favor or byftedlbtof”'^'™'^ itor.
 

 Now, how does the present case differ from that just sup. posed, of a provision for the debtor himself? It is said, there is an essential difference in this:
 
 that
 
 in the one case, there
 
 *184
 
 js an interest reserved to the debtor, and
 
 that,
 
 at least, is lia
 
 debts;
 
 and in the other, the property goes, at all events, from the debtor, and in discharge of his just debts, be ^ paya|jie t0 whom it may. But it is clear, that a deed in ,. . . , , , . which an interest Is secured to the debtor — unless as a mere fesulting trdst — is void
 
 in toto
 
 under the statute, and not merely in regard
 
 to
 
 that provision in favour of the debtor.
 
 Riggs
 
 v.
 
 Munay,
 
 2 John. C. C. 565 — Hobart’s Rep. 14; and therefore the debtor’s interest under the deed is not the only thing subject to his creditors. As to the consideration, that in the other case all property is gone from the debtor, it is true; but to whom does it go? Why, to the very persons to whom every husband and father wishes his property to go — to his wife and children. If it had been secured to the debt- or, he would have desired it chiefly to enable him to do directly what has been done indirectly; namely, provide for his family. Admit that Beasley might, of his charity or caprice, have transferred to his debtor’s family, one half of his debt, and that an assignment to secure the two debts after the transfer, is as valid as one to secure
 
 the
 
 whole to Beasley would have been; yet we cannot regard this transaction as a donation from Beasley to Mrs. Edmundson and her children. It is preposterous to call it So. A bounty is a voluntary act. It was, indeed, a bounty to those persons. But to whom do they look as the author of it? Whom do they thank for it? Most unquestionably not Beasly. They understood the truth óf the case, and are not such dupes as to suppose themselves indebted fof this provision to any thing but to the power the husband and father had ovef his creditors, in giving or refusing to him a preference over other creditors, and to the use he made of that power. The gift was not, therefore, the gift of Beasly — not his free gift. It was forced from him, or purchased from him, by making his transferring one half the debt to the debtor’s family the condition and the price of getting any part of it for himself. The question is, will the law allow such a use to be made of the right to give a preference among creditors? We think not. The rule has been carried far enough in permitting preferences to be
 
 effected by
 
 voluntary assignments. It is too late to question that power;
 
 *185
 
 and generally, the exercise of it is sustained without enquiring into the debtor’s motives for particular preferences. But O XX that must be understood of preferences between real creditors, and cannot be applied to the case of one, who is made to appear to be a creditor, without giving any value, and by the mere contrivance, art or bounty of the debtor himself. To uphold such a transaction as this, would not be to treat the preference we are speaking of as founded on the equity of the creditor to save himself, or even as the privilege of the debtor to be exercised for the benefit of the preferred creditors; but it would be to convert it, or to suffer and entice insolvent debtors to convert it, into a
 
 valuable interest in
 
 themselves, as a means of directly providing for their families, and, in so doing, of indirectly providing for themselves.
 

 A Court of Justice is not to be duped by the mere language parties may use. We are to look at what was said and done, both, and to understand the whole in its substance, as the parties understood it at the time. It is said, the gift of the debt was made by Beasley, and that it must be so, as it was his debt, and nobody else could give it. But that is a view limited by the forms of the transaction; whereas* forms signify nothing upon an occasion of this sorb Beasley gave the debt, but at whose instance? to whom, and from what motive? He gave it, at the
 
 instance of the debtor,
 
 to the debtor’s family, and as the only means of receiving any' thing from the debtor for himself. Is it not plain that substantially this was not a gift by Beasley to the wife and children, but a gift to them by Edmundson himself? Beasley bargains with the debtor that
 
 he
 
 will put up with half of his debt; and as to the other half — which, in respect of his own interest, was extinguished — he stipulates with the debtor that, instead of totally extinguishing it, he will keep it on foot for the benefit of the debtor himself, or any person he may designate. He then nominates his wife and children; and upon the surrender of the former note, he, the debtor, executes a new note for one half the sum, to a person in trust for his own wife and children. Yet, it is said
 
 he
 
 did not give' them this sum of money; but that Beasley did! The Court cannot be so blind as not to see through so simple and shal
 
 *186
 
 low an artifice as this; nor be so insensible to good morals amonS ^le trading classes, and to the tendency of such a transaction to break down the security of creditors, and to put them completely in the power of the debtors, as to hesitate .Q ¿¡ecjaiang that, in law, such a provision cannot stand, and that the deed is void as against the plaintiff, so far as it is a security for the debt in question. It is true, Shield and those whose interests he represents, are not themselves guilty of any fraud. But, then, they are mere volunteers, who gave nothing for this debt, but acquired their interest entirely by the fraud and dishonesty of the person, who made this conveyance as a security to them. Though innocent themselves, they cannot derive a good title through that person, but must take it tainted with his fraud. At the bar it was also urged that the deed was void as a security for the residue of the debt to Beasley himself; and, indeed, that it was void as an entire deed, in respect to all the debts mentioned in it, if the plaintiff had impeached it to that exrnnt. Perhaps it will be found difficult, upon principle or authority, to exone- ‘ rate Beasley from the consequences of his privity in that part of the case which taints the deed and renders it void, to some purpose at least. But, as it obvious that he was more sinned against than sinning, and was innocent of any actual intent to injure any person, but aimed to save himself, the Court would most reluctantly pronounce
 
 the deed ineffectual as
 
 a security for his half of the debt; and will, at least, defer doing so until the question has been farther considered and it shall be found necessary to the justice due to this plaintiff. At present, it is to be hoped there will be no such necessity. The trustee does not give, in his answer, an account of the trust fund; but it is intimated that, when got in, it may be sufficient to satisfy all the debts mentioned in the deed, and leave a- small surplus; which, of course, would be applicable
 
 to
 
 the plaintiff’s judgment, whether the deed stood or not. If the fund should realize those expectations, then, after putting out of the way the debt due on the note to Shield, the means will be ample to pay the plaintiff, without interfering with Beasley’s right to have his debt satisfied out of the fund. Therefore, after declaring that no part of the fund in the
 
 *187
 
 hands of Nichols, the trustee, shall, as against the plaintiff, be applied to the debt to Shield, the decree must direct an enquiry and account of the trust fund, and of the debts paid or payable thereout, so as to enable us to see what sum will be applicable to the plaintiff’s demand. Should there be sufficient without intercepting what would, according to the deed, go to Beasley, we need not consider the question just alluded to, as the deed is, at all events, good between the parties, and Beasley can call for any funds in the hands of the trustee, not claimed by another creditor.
 

 Per Curiam. Decree accordingly.