## J. M. EDDLEMAN ET AL. v. H. C. LENTZ AND WIFE.

(Filed 27 November, 1911.)

1. Pleadings—Construction—Material Allegations.

A complaint under our Code practice, while liberally construed, should state the facts going to make up the cause of action as plainly and concisely as is consistent with reasonable accuracy, and no material allegations should be omitted.

2. Same—Defective Statement—Demurrer—Amendments.

A demurrer *ore tenus* to a defective statement of a good cause of action comes too late after answer, for the defect can be cured by amendment, and it is deemed to be waived when the answer is filed. The demurrer should, therefore, be overruled; but in this case the pleadings may be amended before final judgment, so as to remove the formal defect.

3. Same.

In an action brought by sureties, who had paid the judgment against themselves and their principal, and had the same assigned to one of them for the benefit of all, for the purpose of setting aside a fraudulent conveyance, the failure to state in the complaint that the sureties had paid the judgment is, at most, but a defective statement of a good cause of action, when there is an allegation that the judgment had been assigned "for value and without recourse" to a trustee for the sureties, which subrogated them to the rights of the creditor, the plaintiff in the judgment, to whom they had advanced the consideration, for the use and benefit of the defendant debtor.

4. Principal and Surety—Fraudulent Conveyance—Judgment—Assignment—Parties in Interest.

In an action to set aside a fraudulent conveyance of the principal. the sureties are beneficially interested, and are proper parties, although the judgment against them and their principal,

which they had paid, had been assigned to one of the sureties for the benefit of all of them, and they may be made parties with the assignee, so that the entire controversy may be settled in one action.

5. **Judgment—Satisfaction.**

Where the judgment against the principal and his sureties had been paid by the latter and assigned for the benefit of the sureties to one of them, the latter holds as assignee for the benefit of himself and the other sureties, but the transaction does not satisfy the judgment as to the cosureties and prevent their suing on the same, though as to the surety to whom the assignment was made, the judgment may have been canceled by the payment of his share.

6. **Principal and Surety—Judgment—Assignment—Implied Promise to Pay—Creditor's Bill.**

Sureties who have paid a judgment against themselves and their principal may maintain an action against him upon his implied promise to reimburse them for the money they have paid on the judgment, and in the same action may ask for a cancellation of any fraudulent conveyance made by him.

7. **Deeds and Conveyances—Husband and Wife—Fraud Upon Creditors—Evidence.**

In an action to set aside a conveyance from the husband to his wife, alleged by his creditors to be fraudulent, there was evidence tending to show that the husband's creditors were pressing him, and one of them had secured a judgment against him for $5,000, after which the husband conveyed all of his real estate to his wife, and on the same day executed a bill of sale for a stock of goods and all his property to another person; the wife had no property except that which her husband had previously given to her, and when she took the deed to the property knew of the note on which the judgment had been obtained, and that it had not been paid; the consideration of the deed to the land was a certificate of stock, a gift theretofore made to her by her husband, without consideration. This evidence was held to be competent to show the fraudulent intent of the husband in making the conveyance of the land to his wife, and that she participated in the fraud or executed the deed with knowledge of it.

8. **Fraudulent Conveyance—Consideration—Burden of Proof—Husband and Wife.**

In a creditor's bill to set aside a deed of land from the husband to his wife there was evidence tending to show the intent

of the husband to defraud his creditors, and that the wife participated in the fraudulent transaction, and there was also evidence to show that she was a purchaser for value. It was held correct to charge that if the *feme* defendant purchased the property for value from her husband it would shift the burden to the plaintiffs, and require of them to show that there was actual intent on the part of the husband to defraud his creditors, and that the wife either participated therein or took the deed from him with notice of his covinous purpose; and it was held further that if, before the husband became insolvent, he had, in good faith, transferred to her certain certificates of stock, it was a valid gift and could be considered by the jury in passing upon the question whether she had paid a valuable consideration for the land to her husband, there being evidence that the certificate had afterwards been transferred back to her husband, in consideration of the deed.

9. Judgment—Payment—Evidence—Proof of Payment of Note.

It is competent for the sureties on a note given to a bank to prove by the cashier that a judgment on the note against them and the principal had been paid by them, if the cashier had knowledge of the fact.

10. Fraudulent Intent—Evidence—Contemporaneous Transaction.

It was competent, in this case, to show a contemporaneous fraudulent conveyance by the defendant to a third party, as bearing upon the intent of the defendant to defraud his creditors in executing the conveyances which are sought to be set aside by them in this action.

APPEAL from *Lyon, J.,* at April Special Term, 1911, of ROWAN.

This action was brought to set aside certain conveyances of real estate executed by the insolvent defendant, H. C. Lentz, to his wife, Mary A. Lentz, on the ground that they were made in fraud of creditors. On 7 May, 1904, defendant H. C. Lentz, as principal, with H. T. Graeber, J. L. Rendleman, J. M. Eddleman, W. G. Patterson, J. C. Lingle, F. E. Corriber, J. L. Holshouser, and G. A. Ramseur, as sureties, executed a note to the Davis & Wiley Bank of Salisbury, N. C., in the sum of $2,000, for value received. H. C. Lentz failing to pay said note, action was commenced by the bank, summons served 2 February, 1907, and judgment rendered in favor of the bank against Lentz and his sureties at May Term, 1907, of Rowan Superior Court.

Execution was issued 6 July, 1907, against H. C. Lentz, and returned *nulla bona*. On 6 November, 1909, the bank, for value and without recourse, assigned said judgment, on the record, to one J. M. Eddleman as trustee for the sureties, who had paid the indebtedness. Defendant H. C. Lentz, having also been sued by the First National Bank of Salisbury, 31 January, 1907, on a note for $5,000, upon which judgment was obtained, executed the deeds for all his real estate to his wife, the *feme* defendant, Mary A. Lentz, dated 2 February, 1907, and on the same day executed a bill of sale to one Fesperman for a certain stock of goods, including all his personal property. The deeds to Mary A. Lentz and the bill of sale to Fesperman were recorded the day of their execution. The wife, Mary A. Lentz, grantee, had no separate estate, and no money or property of any kind except what her huband, defendant H. C. Lentz, gave her, and when the deeds were made to her she knew of the existence of the note to the bank, and that it had not been paid. The $1,229 note alleged to have been executed to her by her husband, which was a part of the consideration for the deeds, was given for stock in the J. A. Rose Company, which her husband had theretofore bought and paid for, and the certificate of stock was made to her without consideration.

The $1,000 mortgage, which it is alleged she assumed, and upon which it is alleged she paid $750, the proceeds from the sale of a house and lot in China Grove, was a valid encumbrance, but the $750 was indirectly paid by the husband, H. C. Lentz, who had bought and paid for the house and lot at China Grove, and had the title made to her, without consideration.

The jury returned the following verdict:

1. Did the defendant H. C. Lentz execute and deliver the deeds mentioned in the complaint with intent to hinder, delay, and defraud his creditors, as alleged in the complaint? Answer: Yes.

2. If so, did the defendant Mrs. Mary A. Lentz have knowledge of and participate in such fraudulent intent? Answer: Yes.

There was no objection to the issues by either party. Judgment, declaring the deeds void, was entered upon the verdict, and defendants appealed.

*T. F. Kluttz & Son and John L. Rendleman for plaintiff.*
*Jerome & Price and T. H. Hudson for defendant.*

WALKER, J.  The defendants demurred *ore tenus* to the complaint, upon the ground that the complaint did not state a good cause of action, plaintiffs having failed to allege therein that the judgment against H. C. Lentz and his sureties had been paid by the latter and assigned to a trustee for them.  The pleading, it is true, was not drawn with that regard for technical precision and accuracy which even the liberal provisions of The Code require.  It must not be supposed that because pleadings are now under The Code construed favorably to the pleader, to effectuate the main purpose of having cases tried upon their real merits, that it permits the pleader to disregard the ordinary and familiar rule requiring pleadings to be so drawn as to present clearly the issues in the case.  The Code provides that the cause of action shall be plainly and concisely stated, but this does not mean that essential fullness of statement shall be sacrificed to conciseness, but that all the facts going to make up the cause of action must be stated as plainly and concisely as is consistent with perfect accuracy, and that no material allegation should be omitted.  *Blackmore v. Winders,* 144 N. C., 212; *Bank v. Duffy,* 156 N. C., 83.  Looseness in pleading and inadequacy of allegation are as much condemned by the present code of procedure as they were under the former strict and exacting system of the common law.  It is form and fiction that have been abolished, but the essential principles of good pleading have been retained.

The defendants' demurrer comes too late.  They passed the defective pleading by themselves answering to the merits, and thereby waived the defect, which is not a fatal one, but can be cured by amendment.  It is the defective statement of a good cause of action, and not the statement of a defective cause.  When the defect appears in the cause of action itself, no amendment can cure it, for it has no existence in fact; it is otherwise where the defect is merely in the statement, for in such a case it can be removed by amendment, and the cause of action will thus be perfected.  *Garrett v. Trotter,* 65 N. C., 430; *Warner v.*

*R. R.,* 94 N. C., 251; *Johnson v. Finch,* 93 N. C., 205; *McElwee v. Blackwell,* 94 N. C., 261, and cases *supra.*

While the complaint does not allege, as good pleading perhaps required, that the sureties had paid the judgment, it does state that the judgment had been assigned "for value and without recourse" to a trustee for the sureties, which subrogated them in law and equity to the rights of the creditor, or plaintiff in the judgment, to whom they had advanced the consideration for the use and benefit of the debtor, H. C. Lentz, one of the defendants.

In any view of the complaint and the proceedings below, the demurrer *ore tenus* was properly overruled; but before final judgment is entered in the case the complaint should be amended by inserting the omitted allegation as to the payment by the sureties. The sureties should also be made parties, as plaintiffs, in their own right, and not merely as beneficiaries under the assignment of the judgment to the trustee, as they are the real parties in interest within the meaning of The Code, the trustee merely holding the naked legal title for them, and not being beneficially interested in the recovery. They are certainly proper parties, in a case like this one, notwithstanding Revisal, sec. 404, and it is best that they should be brought in by amendment, and joined as parties with the trustee.

It is contended by the defendants that the sureties satisfied the judgment by the payment, but this is not so, as it appears that it was assigned to a trustee for their benefit, if that was necessary, and the fact that he may be one of the sureties, which does not clearly appear, can make no difference, as he holds, at least, for the other sureties under the assignment, if, as to himself, the judgment is canceled by the payment of his share. Besides, the sureties can maintain the action upon the implied promise of their principal, H. C. Lentz, to reimburse them for the money paid on the judgment to his use, and a fresh judgment against him is not necessary for the purpose, as we have recently held in *Silk Co. v. Spinning Co.,* 154 N. C., 421. See, also, *Bank v. Harris,* 84 N. C., 206; *Mebane v. Layton,* 86 N. C., 574; *McLendon v. Commissioners,* 71 N. C., 38.

As to the rights and remedies of sureties, under such circumstances, the following authorities may further be consulted: 27 Am. and Eng. Enc. (2 Ed.), 213; Stearns on Suretyship, 470, 474, 478; Brandt on Suretyship and Guaranty (3 Ed.), secs. 342, 343, and 346; *Leightbown v. McMyn,* L. R., 33 Ch. Div., 575; *Gerber v. Shrak,* 72 Ind., 553; *Neal v. Nash,* 23 Ohio St., 483; *Benne v. Schnecke,* 100 Mo., 250; *Bragg v. Patterson,* 85 Ala., 233; *Harris v. Frank,* 29 Kansas, 200. We do not see how the defendants are now interested in the question as to the sureties' rights under the judgment. The proceeds of the property fraudulently conveyed must be applied to the payment of H. C. Lentz's creditors, and the right of the sureties to the lien of the judgment is not, at present, involved.

Having disposed of these preliminary matters, we will now proceed to consider the remaining question, as to the fraud. It seems to us, after carefully reading the evidence, that there is plenary proof of the intent in the mind of H. C. Lentz to defeat his creditors, when he made the conveyances to his wife and Fesperman. He was utterly and hopelessly insolvent at the time. The circumstances, not disputed, tend to show his unlawful purpose to divest himself of his property and put it away so that it could not be reached by his creditors, who were justly entitled to have it applied to the payment of their debts. Not only this, but he declared his dishonest purpose to the witness J. L. Holshouser on the very eve of his impending financial disaster, telling him that he intended to save himself, and advising Holshouser to do the same. The *feme* defendant objected to this testimony, but it was competent, as to his intent, but not binding upon her or affecting her interest in the property, unless she participated in the fraud or accepted the deed with knowledge of it. As to H. C. Lentz, the proof discloses a bald and transparent fraud. Did she avail herself of it with such notice? This is really the only practical question in the case. It would seem that the fraud was so palpable—so visible to the naked eye—if she had notice of the circumstances, which appears more than probable, that she could not have overlooked it, or misunderstood the true nature of the transaction. She knew that he was insolvent, or should have known it, which is the same in

law; that her husband was heavily involved and was transferring all he had to her without any adequate consideration, and upon the sole pretense of benefiting her, without any regard for the just rights of his creditors. She had paid nothing for the property, real or personal, that he had given her, but was really, and to all intents and purposes, a mere volunteer. Such a transaction should not be allowed to stand in the way of creditors so as to defeat their rights.

The presiding judge (*Hon. C. C. Lyon*) stated the case with unusual clearness and with impartiality, and most favorably for the defendant, in his charge to the jury, following closely the decisions of this Court upon the subject, as we understand and interpret them. He instructed them substantially that, notwithstanding all the suspicious circumstances relied on to condemn the transfer of the property, if they found that the *feme* defendant paid value for the property, it would shift the burden to the plaintiffs, and require of them to prove that there was an actual intent on the part of H. C. Lentz to defraud, and, moreover, that the *feme* defendant either participated in the fraudulent alienation of her husband's property or took the deeds from him with actual notice of his covinous purpose. He even told the jury that if, before her husband became insolvent, he had transferred to her the stock in the Rouse Company, it was a valid gift, and should be treated by them as her property, in passing upon the question as to the consideration for the conveyances, she having testified that her husband had transferred the stock to her as a gift, and afterwards had bought it back, giving her his note for $1,229 for it, and that this debt of his to her, and a previous mortgage on the land, which she assumed, constituted the consideration of the deed to her for the property. There was ample evidence that the *feme* defendant was fully cognizant of the wrongful intent of her husband in making the transfers to her. It was all done at a time when he was being hotly pursued by his creditors, and it had every appearance of an effort, on his part, to better prepare himself for the race he was running with his creditors "to save himself" and to outstrip them. No one could hardly fail to discover his motive.

In order to sustain the charge of the court, it is only necessary that we should refer to what is said by *Justice Avery* in the

learned and valuable opinion he delivered for the Court in *Peeler v. Peeler,* 109 N. C., 628, as follows: "Where an insolvent husband has conveyed land to his wife, and a preëxisting creditor brings an action to impeach the deed for fraud, the *onus* is upon her to show that a consideration actually passed in the shape of money paid, something of value delivered, or the discharge of a debt due from the husband to her. *Brown v. Mitchell,* 102 N. C., 373; Bump. Fraud. Con., pp. 6, 318; *Stephenson v. Felton,* 106 N. C., 120; *Osborne v. Wilkes,* 108 N. C., 669; *Woodruff v. Bowles,* 104 N. C., 213; Bigelow on Frauds, 136. To this extent she is required to assume a burden not placed upon other grantees. *Helms v. Green,* 105 N. C., 257. When she offers testimony sufficient to satisfy the jury of the existence, validity, and discharge of such previous debt by the conveyance, or shows in some other way that the deed was founded upon a valuable consideration, the burden shifts again and rests upon the plaintiff to show, to the satisfaction of the jury, the fraud which he has alleged as the ground of the relief demanded. *Brown v. Mitchell, supra; McLeod v. Bullard,* 84 N. C., 515. But if, after turning the laboring oar over to the creditor, the jury are satisfied, upon a review of the testimony, that the husband executed the deed to her to hinder, delay, or defeat a creditor in the collection of his debt, and that she participated in his purpose, or knew of his intent at the time, though the consideration may have been a valid preëxisting debt to her, it is their duty to find that the conveyance was made to defraud creditors. In the last clause of the statute (Code, sec. 1545; 13 Eliz., ch. 5, sec. 2) it is provided that as against a person whose debt, etc., 'shall or might be in any wise disturbed, hindered, delayed, or defrauded' by the covinous and fraudulent practices previously mentioned in the same section, viz., by conveyances executed 'with the purpose and intent to delay, hinder, and defraud creditors,' such a conveyance shall be void." If there was the least departure by the learned trial judge from this statement of the law, it was decidedly in favor of the *feme* defendant, and, therefore, she cannot complain; but we think the law was given to the jury with perfect accuracy. *Redmond v. Chandley,* 119 N. C., 575; *Graeber v. Sides,* 151 N. C., 596; *Crockett v. Bray,* 151 N. C., 615.

Speaking for himself, and not in the least committing the Court to his view, the writer of this opinion thinks that the law is not, and should not be, so favorable to the married woman as stated by this Court in the cases cited. Our statute, Revisal, sec. 764, requires the purchaser of property, where the fraud of the vendor is shown, to take the burden and prove that he (or she) acquired it for value, or upon good consideration, and without notice of the fraud. *Cox v. Wall,* 132 N. C., 734; Pell's Revisal, sec. 964, and notes. But this Court seems to have made an exception to that statutory rule, in the case of the wife taking a conveyance from her husband, though there would seem to be no real and convincing reason for it. The presumption, it seems, should be stronger against her than it is when the conveyance is made to one not so closely connected with the vendor, or sustaining such an intimate and confidential relation towards him, for, in the case of husband and wife, with his strong influence over her, there is a greater temptation to commit fraud, and a better opportunity afforded for its consummation. The position of the *feme* defendant would not be improved, but made worse, should the law be thus declared. She would have to take all, instead of only a part of the burden to rebut the presumption against her. But the law, as it now stands, is more favorable to her, as we have shown, and we follow the decisions.

The jury have found the facts against the defendants, upon evidence which fully warrants the verdict, and under instructions wholly free from error.

It is competent to prove by O. D. Davis that the sureties had paid the judgment of the Davis & Wiley Bank against H. C. Lentz. He knew the facts, as its cashier and receiving teller, and why should he not be permitted to speak of it? The evidence as to the bill of sale to Fesperman was also competent, as showing a contemporary transaction, indicating the fraudulent purpose of Lentz and the preparation he was making at the time to put away his property in order to defeat his creditors. It was but forging one of the links in the chain of circumstances going to establish the essential fact of intent. It can make no difference that the conveyance was made to a third party, for still it bears upon the issue as to the covinous purpose. *Brink v. Black,* 77 N. C., 59. The evidence as to a fraudulent intent

usually is permitted to take a wide range, as it may be inferred from many circumstances, each one by itself being apparently of small importance, but together producing an absolute conviction.

The court might, in this case, have gone further than it did in the judgment, and ordered a sale of the land for the payment of the judgment debt evidenced by it, but there was no request for it to do so, and we merely refer to it for the purpose of calling attention to the advisability of deciding all controversies, relating to the same subject-matter, in one action, as contemplated by The Code.

No error.