PEOPLES BANK AND TRUST COMPANY and J. S. MACKORELL, RECEIVER OF THE PEOPLES BANK AND TRUST COMPANY, v. R. J. MACKORELL and T. M. MACKORELL.

(Filed 6 June, 1928.)

**1. Fraudulent Conveyances—Transfers and Transactions Invalid—Insolvency—Questions for Jury.**

A contract made in consideration of support by the son of his father and mother for life for one hundred dollars and certain shares of stock of the father, of the value of seven thousand dollars, and the father has not retained sufficient property out of which to pay his then existing creditors, and the son has acted in good faith without notice or knowledge, the transfer of the stock to the son is not valid as against his father's creditors beyond the amount he has previously expended for the support, and for which he was liable under the terms of the contract, and where

issues raising this question have been tendered, refused, and exceptions entered, and this phase of the evidence in the case has not been presented to the jury, a new trial will be ordered on appeal. C. S., 1009.

**2. Same—Knowledge of Grantee.**

When the father has entered into a contract with his son for support of himself and wife for life, and gives as a consideration certain of his property, without retaining sufficient property to pay his then existing creditors, and the pleadings and evidence raise the question of the son's good faith and part performance without notice, these questions should be submitted to the jury upon appropriate issues.

APPEAL by defendants from *Schenck, J.,* at September Term, 1927, of CATAWBA. New trial.

H. R. Mackorell made and executed a note dated York, S. C., 1 May, 1924, due 1 November, 1924, for $3,000 to the Peoples Bank and Trust Company, with 8 per cent interest from maturity. On the back of the note appears the following: "Demand notice and protest waived. (Signed) R. J. Mackorell." H. R. Mackorell, after the execution and delivery of the note to plaintiff bank, was duly adjudicated a bankrupt, and Geo. W. Williams, the trustee in bankruptcy, paid on the note two dividends, one a 10 per cent $300, 10/11/24, and one a 5 per cent $150, 8/20/25. The estate of the bankrupt has been fully administered. J. S. Mackorell was duly appointed receiver of the Peoples Bank and Trust Company by the Court of Common Pleas for the county of York, S. C., and made a party plaintiff by order of the judge of the Superior Court of Catawba County, N. C. There is now due, owing and unpaid on the note $3,000, less the payments above mentioned, and interest. That before the delivery of the note to said bank R. J. Mackorell, the defendant, became the endorser, and it is alleged was justly indebted to plaintiff in said amount above set forth. It is alleged by plaintiff that the defendants, R. J. and T. M. Mackorell own no real estate and no personal property in excess of personal property exempt by law, except that defendant R. J. Mackorell owns 75 shares of the par value of $100 of the capital stock of the Hickory House Furnishing Company, a corporation; that R. J. Mackorell, to hinder, delay and defeat plaintiff's rights, is threatening and attempting to sell said stock to his son T. M. Mackorell, a defendant in this action; that R. J. Mackorell is taking out of the business large sums in excess of his salary and depleting the assets in order to defeat plaintiff's rights; that T. M. Mackorell claims an interest by the attempted transfer; that inasmuch as defendants do not own any real property or any personal property of value in excess of the exemption allowed by law, except the said 75 shares of stock owned by defendant, R. J. Mackorell, the plaintiff alleges that the transfer of same by the defendants, or either of them, by sale or otherwise, would work great and irreparable injury and damage to plaintiff.

The prayer is for judgment on the balance of the note and defendants be "enjoined and restrained from transferring or attempting to transfer, or doing any act in aid or furtherance of an attempt to transfer said 75 shares of stock or any part of same, and that they have any other or further relief to which they may be entitled herein."

The material part of the answer for the decision of the case on the present record concerns the answer of both defendants, R. J. and T. M. Mackorell, that sets up an agreement by which R. J. Mackorell sells, assigns, transfers and sets over the stock, 70 shares, to T. M. Mackorell, reciting a consideration of $100, and to support and provide for R. J. Mackorell and his wife the balance of their lives and the life of the survivor of them, who are advanced in years. The agreement was made some fourteen months before this action was instituted, T. M. Mackorell giving his bond for $7,000 to faithfully perform the agreement; that T. M. Mackorell had no notice or knowledge that an action was contemplated. (We construe this to mean that he had no notice of R. J. Mackorell's alleged indebtedness to plaintiff.)

It was in evidence that the above contract was being carried out by T. M. Mackorell. The defendant, T. M. Mackorell, tendered the following issue, which was refused by the court below:

"Was the defendant, T. M. Mackorell, a holder in good faith and for value, of the seventy shares of stock mentioned in the pleadings?"

The issues submitted to the jury and their answers thereto were as follows:

"1. In what sum, if any, is the defendant, R. J. Mackorell, indebted to the plaintiffs on the note sued on? Answer: $2,550, and interest 8 per cent per annum from 1 November, 1924.

"2. Did the defendant, R. J. Mackorell, on or about 17 September, 1924, transfer and assign seventy shares of stock in the Hickory House Furnishing Company to his codefendant, T. M. Mackorell? Answer: Yes.

"3. If so, was said transfer made upon consideration of the future support and maintenance of said R. J. Mackorell and wife by his son, the codefendant, T. M. Mackorell? Answer: Yes.

"4. If so, did defendant, R. J. Mackorell, fail to retain property fully sufficient and available for the satisfaction of his then creditors? Answer: Yes."

T. M. Mackorell, among other things, testified: "I bought this stock without any knowledge that my father had signed a note for my brother, H. R. Mackorell. I didn't know anything about the note."

The defendants made numerous exceptions and assignments of error and appealed to the Supreme Court. The material ones and other necessary facts will be set forth in the opinion.

*J. A. Marion and Self & Bagby for plaintiff.*
*A. A. Whitener for R. J. Mackorell.*
*Louie A. Whitener and T. Manly Whitener for T. M. Mackorell.*

CLARKSON, J. "In *Aman v. Walker,* 165 N. C., 224, 227, 81 S. E., 162, it was held that the principles to be deduced from the authorities as to fraudulent conveyances, are (1) If the conveyance is voluntary, and the grantor retains property fully sufficient and available to pay his debts then existing, and there is no actual intent to defraud, the conveyance is valid. (2) If the conveyance is voluntary, and the grantor did not retain property fully sufficient and available to pay his debts then existing, it is invalid as to creditors; but it cannot be impeached by subsequent creditors without proof of the existence of a debt at the time of its execution which is unpaid, and when this is established and the conveyance avoided, subsequent creditors are let in and the property is subjected to the payment of creditors generally. (3) If the conveyance is voluntary and made with the actual intent upon the part of the grantor to defraud creditors, it is void, although this fraudulent intent is not participated in by the grantee, and although property sufficient and available to pay existing debts is retained. (4) If the conveyance is upon a valuable consideration, and made with the actual intent to defraud creditors upon the part of the grantor alone, not participated in by the grantee and of which intent he had no notice, it is valid. (5) If the conveyance is upon a valuable consideration, but made with the actual intent to defraud creditors on the part of the grantor, participated in by the grantee or of which he has notice, it is void. *Black v. Sanders,* 46 N. C., 67; *Warren v. Makely,* 85 N. C., 12, 14; *Credle v. Carrawan,* 64 N. C., 422, 424; *Worthy v. Brady,* 91 N. C., 265, 268; *Savage v. Knight,* 92 N. C., 493, 498; *Clement v. Cozart,* 112 N. C., 412, 420, 17 S. E., 486; *Hobbs v. Cashwell,* 152 N. C., 183, 188, 67 S. E., 495; *Powell Bros. v. McMullan Lumber Co.,* 153 N. C., 52, 58, 68 S. E., 926." Michie's N. C. Code, Anno., p. 385; *Tire Co. v. Lester,* 190 N. C., 411; *Wallace v. Phillips, ante,* 665. See C. S., 1005, 1006, 1007, 1008, 1009.

There can be no dispute that the contract between the father and son, in the present action, there being no mistake or fraud, both being *sui juris,* is a valid and binding one. The record indicates it is being carried out in accordance with its terms. As between the parties, the question of adequacy of consideration ordinarily is not material in the absence of fraud. *Young v. Highway Com.,* 190 N. C., 52. On the subject it may be of interest to quote from Shirley's Leading Cases in the Common Law, 3d ed., p. 1: " 'Farmer Whitacre,' said the cunning Thornborrow, 'let us strike a bargain. If I pay you a five-pound note down

now, will you give me 2 rye corns next Monday, 4 on the Monday week, 8 on the Monday fortnight, and so on—doubling it every Monday—for the year?' Whitacre jumped at it; five pounds never were earned so easily. So the thing was settled. But when our yokel friend came to calculate how much rye he should have to deliver, he found that it came to more than was grown in a year in all England. Thornborrow, however, brought his action, and succeeded; for the court said that 'though the contract was a foolish one, it would hold in law.' There was a consideration, and as for the other point raised for the defendant, that it was an impossible contract, it was only impossible in respect to the defendant's ability." *Thornborrow v. Whitacre,* 2 Ld. Raym., 1164 (1705).

There are now modifications and exceptions to the harsh rule—where a contract is extortionate and unconscionable as to indicate mistake and fraud. An instance of such a bargain is where one bought a horse and agreed to pay a penny for the first nail in his shoes and to double each time for every other nail. *Williams v. Chaffin,* 2 Dev., 13 N. C., at p. 335. So, where a contract is so extortionate and unconscionable on its face as to raise a presumption of fraud or to require but slight additional evidence to justify such presumption, it will not be enforced—for instance, the famous contract of the United States government to pay sixty cents a pound for shucks worth at the time 1¾ cents per pound. *Hume v. U. S.,* 132 U. S., p. 406; Mordecai's Law Lectures, 2 ed., p. 112.

C. S., 1007, is as follows: "No voluntary gift or settlement of property by one indebted shall be deemed or taken to be void in law, as to creditors of the donor or settler prior to such gift or settlement, by reason merely of such indebtedness if property, at the time of making such gift or settlement, fully sufficient and available for the satisfaction of his then creditors, be retained by such donor or settler; but the indebtedness of the donor or settler at such time shall be held and taken, as well with respect to creditors prior as creditors subsequent to such gift or settlement, to be evidence only from which an intent to delay, hinder or defraud creditors may be inferred; and in any trial shall, as such, be submitted by the court to the jury, with such observation as may be right and proper."

The stock—$7,000—was assigned, transferred and set over from the father to the son. The consideration was $100, and to support and provide for the father and his wife the balance of their lives and the life of the survivor of them. The book value of the stock is $1.10 on the dollar.

Under C. S., 1009, a purchaser for value and without notice of any fraud gets good title by conveyance or transfer from fraudulent vendor. See *Cox v. Wall,* 132 N. C., 730.

In Bigelow on Fraudulent Conveyances, Revised Edition, at p. 545, it is said: "The courts are not agreed in regard to the effect of undertakings by a grantee to support a debtor-grantor by way of consideration for the conveyance of all or a large part of the grantor's estate. In New York, Illinois, and elsewhere, it is held that such a case does not make the valuable, or rather the valuable and bona fide, consideration required by the statute to cut off the claims of creditors of the grantor. . . . (p. 547). The exclusion of such a consideration should not rest upon the ground that it may not be valuable, but rather on the ground that, being in effect of the nature of a trust or reservation to the exclusion of creditors or of a trust or a reservation in favor of some one apparently having no estate in the property, and seldom appearing of record, the consideration lacks good faith. This is shown directly by some of the cases, and indirectly by others. The real question then is, whether the nature of the proposed consideration should fix upon the grantee the duty of inquiry concerning the effect of the transaction. See *Sturdivant v. Davis,* 31 N. C., 365; *Kissam v. Edmundson,* 36 N. C., 180; *Cansler v. Cobb,* 77 N. C., 30; *Worthy v. Brady,* 91 N. C., 265; *Eddleman v. Lentz,* 158 N. C., 65; *Shuford v. Cook,* 169 N. C., 52; *Bank v. Pack,* 178 N. C., 388."

We think the principle applicable in the present action is thus stated: "It has in some jurisdictions been held that where the grantee has in good faith furnished support, he may be reimbursed for the same when the conveyance is set aside (or be held liable merely for value of the land beyond that of the support furnished)." *Bigelow, supra,* at p. 546, note, citing authorities.

The subject, with full annotations, is set forth in *Cherry Co. v. Helms,* 98 Neb., 626, 2 A. L. R., p. 1436; *Smith v. Clark,* 23 A. L. R., p. 582.

It is contended by defendant, T. M. Mackorell, that in compliance with the contract made with his father, that he in good faith bought the stock, without notice or knowledge of his father's indebtedness; that he paid out and became responsible for (1) The sum of $100, paid at the time of the sale and transfer; (2) the sum of $350, which he became liable on for money borrowed for his father; (3) the sum of $77.55 in cash given to his father from time to time; (4) the sum of $1,044.48 on which he is now liable to the corporation for advances to his father; (5) money expended for groceries for his father and approximating (at the time of the trial in the lower court) $80.00.

We think the issues submitted practically correct, so far as they go, but under the facts and circumstances of this case the issue tendered by defendant, as modified below, should have been submitted to the jury: "Was the defendant, T. M. Mackorell, a holder in good faith (and for value—stricken out) and without notice of the seventy shares of stock

mentioned in the pleadings?" And also an issue: "Did the defendant, T. M. Mackorell, in good faith and without notice, make advances under the agreement with R. J. Mackorell, and if so, in what amount?"

We think the allegations of the complaint, taken as a whole, sufficiently show that the grantor did not retain property fully sufficient and available for the satisfaction of his then creditors, and the motion of defendants for judgment as in case of nonsuit at the close of plaintiff's evidence and at the close of all the evidence, properly refused. C. S., 567. See *Wallace v. Phillips, ante,* 665.

On a new trial the other matters discussed by the parties can be determined on the evidence as presented. For the reasons given, there must be a

New trial.