Faw v. Wilkes Sombrero, Inc., 2021 NCBC 80.

STATE OF NORTH CAROLINA

WILKES COUNTY

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
20 CVS 421

GREGORY FAW, both individually as a
shareholder of and derivatively as a
representative on behalf of WILKES
SOMBRERO, INC.,

Plaintiffs,

v.

WILKES SOMBRERO, INC.; JAMES
CLAYTON, Individually and as Co-
Executor of the ESTATE OF J.C. FAW;
DIANE FAW SHAW, Individually and
as Co-Executor of the ESTATE OF J.C.
FAW; JUDY D. FAW, Individually and
as Co-Executor of the ESTATE OF J.C.
FAW,

Defendants.

**ORDER AND OPINION ON CROSS-
MOTIONS FOR PARTIAL SUMMARY
JUDGMENT**

## I.     INTRODUCTION

1.      Plaintiff Gregory Faw ("Plaintiff") brings this action individually and on behalf of Defendant Wilkes Sombrero, Inc. ("Wilkes Sombrero"), following the death of its founder and Faw family member J.C. Faw ("J.C.") in February 2019. Plaintiff sues J.C.'s estate and the individual co-executors, other Faw family members, because they refuse to recognize his alleged 10% ownership interest in Wilkes Sombrero. Resolution of the present motions turns on the threshold issue of whether Plaintiff is, in fact, a shareholder of Wilkes Sombrero. Plaintiff argues that he is; Defendants argue that he is not. The parties present this issue to the Court on cross-motions for partial summary judgment.

*Bennett & Guthrie, PLLC, by Joshua H. Bennett and Mitchell Hendrix Blankenship, for Plaintiff Gregory Faw, individually and derivatively on behalf of Wilkes Sombrero, Inc.*

*Logsdon & Neece, PLLC, by John Michael Logsdon, for Defendants Judy D. Faw, Diane Faw Shaw, James Clayton, each individually and as Co-Executor of the Estate of J.C. Shaw, and Nominal Defendant Wilkes Sombrero, Inc.*

Earp, Judge.

## II.      FACTUAL BACKGROUND

2.      The Court does not make findings of fact when ruling on motions for summary judgment.  Instead, the Court summarizes material facts it considers to be uncontested.  *Hyde Ins. Agency, Inc. v. Dixie Leasing Corp.*, 26 N.C. App. 138, 142 (1975).  The following background, describing the evidence and noting relevant disputes, is therefore intended only to provide context for the Court's analysis and ruling.

3.      Wilkes Sombrero is a North Carolina corporation formed in 1987 by J.C. and his brother-in-law Wade Dupree ("Dupree").  (Br. Supp. Defs.' Mot. Partial Summ. J. Ex. B [hereinafter "Br. Supp. Defs.' Mot."], ECF No. 13; Materials Supp. Pl.'s Mot. Partial Summ. J. Ex. A, 16:13–16 [hereinafter "Morris Dep."], ECF No. 15.1.)  Dupree first entered into a franchise agreement with Taco Bell on 27 March 1987 to establish a restaurant on U.S. Highway 421 and Winkler Street in Wilkesboro, North Carolina. (Br. Supp. Defs.' Mot. Ex. D-1.)  On 19 May 1987, Dupree assigned all right, title, and interest in and to this franchise agreement to Wilkes Sombrero.  (Br. Supp. Defs.' Mot. Ex. D-2.)

4.      Some twenty years later, on 12 June 2007, J.C. and Plaintiff entered into another franchise agreement with Taco Bell to establish a second restaurant, this one on 1 Sparta Road in Wilkesboro.  (Materials Supp. Pl.'s Mot. Partial Summ. J. Ex. 8 to Ex. A, at 135.)  On 12 July 2007 J.C. and Plaintiff assigned all right, title, and interest in and to the second franchise agreement to Wilkes Sombrero. (Materials Supp. Pl.'s Mot. Partial Summ. J. Ex. 8 to Ex. A, at 153.)

5.      Until January 2006, Dupree was president of Wilkes Sombrero and owned 49% of its stock, while J.C. served as secretary and owned the remaining 51% of the corporation's shares.  (*See* Br. Supp. Defs.' Mot. Exs. C-1–C-2.)  Dupree was responsible for restaurant operations.  (Morris Dep. 17:22–18:9.)

6.      After deciding to move to Arizona, Dupree assigned to J.C. "all right, title in and to 100% of his interest in Wilkes Sombrero" as franchisee of the Taco Bell restaurant on Winkler Street, Wilkesboro, NC on 25 January 2006.[1]  (Br. Supp. Defs.' Mot. Ex. E.)  Thereafter, on 28 February 2006, Dupree transferred his 49% interest in Wilkes Sombrero to J.C., making J.C. the sole owner of all of Wilkes Sombrero's shares.  (Br. Supp. Defs.' Mot Ex. C-2.)

7.      Plaintiff testified that he was informed by Dupree prior to Dupree's departure that Taco Bell required the operating managers of its restaurants to be "owner-operators" and to hold at least a 10% ownership stake in their franchises. (Materials Supp. Pl.'s Mot. Partial Summ. J. Ex. B, 15:8–17:25 [hereinafter "Pl.'s Dep."].)  In addition, Plaintiff understood that an owner-operator was required to

---

[1] Pursuant to the assignment, Dupree would be relieved of liability under the initial franchise agreement if he did not default on any obligations for one year.  (Br. Supp. Defs.' Mot. Ex. E.)

complete a training program hosted by Taco Bell. (Pl.'s Dep. 17:4–25.) Plaintiff admits, however, that the owner-operator requirement does not appear in the text of any of the franchise agreements between Wilkes Sombrero and Taco Bell. (Pl.'s Dep. 15:24–16:23.)

8. J.C. apparently had no desire to operate a Taco Bell restaurant himself. (Morris Dep. 17:22–18:2.) Therefore, Dupree's move left Wilkes Sombrero without an operator who owned at least 10% of the franchise. To remedy this perceived deficiency, Plaintiff testified that J.C. transferred a 10% ownership interest in Wilkes Sombrero to him in exchange for Plaintiff's completion of a required Taco Bell training program and assumption of the owner-operator role. (Pl.'s Dep. 17:6–20, 25:19–25.)

9. The parties offer competing evidence concerning Plaintiff's status as a shareholder. Plaintiff points to the following evidence to support his claim that he *is* a shareholder of Wilkes Sombrero:

    a. First, the record contains an "Application for Taco Bell Franchise and Ownership Schedule" (the "Application") prepared by Plaintiff and signed by both Plaintiff and J.C., indicating that Plaintiff is a 10% owner in Wilkes Sombrero. (Br. Supp. Defs.' Mot. Ex. F; Pl.'s Dep. 7:9–15.) The signatures on the Application are undated, but the Application itself references a franchise offering circular dated 25 March 2005. (Br. Supp. Defs.' Mot. Ex. F.)

b. Second, J.C. signed a Taco Bell Corporate Franchise Ownership Representation Form on 5 January 2006 reflecting that Plaintiff had a 10% ownership interest in Wilkes Sombrero. (Br. Supp. Defs.' Mot. Ex. G.)

c. Third, both J.C. and Plaintiff signed an updated franchise agreement for the Winkler Street location on 25 January 2006. (Br. Supp. Defs.' Mot. Ex. H.)

d. Fourth, Defendants admit that "[s]ubsequent franchise agreements and associated documents for both [Taco Bell restaurants owned by Wilkes Sombrero] are substantially similar to the 2006 franchise agreement." (Br. Supp. Defs.' Mot. 5.)

e. Fifth, Plaintiff made personal guaranties to Taco Bell on behalf of Wilkes Sombrero over the course of multiple years, something he claims he would not have done had he not believed he was an owner of the business. (Am. Compl. ¶¶ 72–73, ECF No. 8.1; Morris Dep. Exs. 7–17.)

10. For their part, Defendants rely on the following evidence in contending that Plaintiff *is not* a shareholder in the company:

a. First, Plaintiff could not have been an owner-operator in March 2005 because Dupree did not decide to end his role as owner-operator and transfer his 49% interest to J.C. until 28 February 2006, almost a year later. (Br. Supp. Defs.' Mot. Ex. C-2.) Therefore, according to

Defendants, at the (presumed) time of the Application, J.C. owned 51 shares and Dupree still owned 49 shares. (*See* Br. Supp. Defs.' Mot. 4–5; Br. Supp. Defs.' Mot. Exs. C-2, E, F.)

b. Second, it is undisputed that Plaintiff never received share certificates for his interest in Wilkes Sombrero. (Pl.'s Dep. 26:1–10.)

c. Third, Ira Morris, secretary of Wilkes Sombrero and the corporation's designated representative under North Carolina Rule of Civil Procedure 30(b)(6) in this litigation ("Morris"), testified that J.C. never instructed him to transfer shares of Wilkes Sombrero to Plaintiff. (Morris Dep. 46:24–47:23.)

d. Fourth, Plaintiff alleges that he received the stock upon completion of the required Taco Bell training "in or around December 2005 or January 2006." (Am. Compl. ¶¶ 22–23.) However, Morris represented to the lessor of land used by Wilkes Sombrero for one of its restaurants that, "[a]s of February 28, 2006, Mr. Faw has been the 100% owner of Wilkes Sombrero, Inc." (*See* Br. Supp. Defs.' Mot. Ex. I.)

e. Finally, over the next thirteen years, Plaintiff received W-2 wages but never received shareholder distributions, (Br. Supp. Defs.' Mot. Ex. P, Pl.'s Resps. to Reqs. for Admis. ¶¶ 6–7), or K-1 forms, (Br. Supp. Defs.' Mot. Ex. J).

11. Following J.C.'s death on 12 February 2019, his co-executors attempted to assign Wilkes Sombrero's Taco Bell franchise rights to another entity and liquidate its remaining assets. (Answer to Am. Compl., Affirmative Defenses, & Mots. ¶¶ 30–31 [hereinafter "Answer"], ECF No. 22.) However, the proposed assignee, relying on Taco Bell's information regarding ownership, required Plaintiff's approval of the assignment. Therefore, Defendants presented Plaintiff with an "Assignment of Franchise Agreement to Limited Liability Company," which Plaintiff refused to sign. (Answer ¶ 31.) This litigation followed.

### III. PROCEDURAL BACKGROUND

12. Plaintiff initiated this action by filing the Complaint on 9 April 2020. (ECF No. 4.) Plaintiff filed his Amended Complaint on 8 January 2021. (ECF No. 8.1.)

13. This case was designated a mandatory complex business case on 17 April 2020, (Designation Ord., ECF No. 1), and was assigned to the Honorable James L. Gale on 20 April 2020, (Assignment Ord., ECF No. 2). This case was reassigned to the undersigned on 6 May 2020. (Reassignment Ord., ECF No. 20.)

14. In his Amended Complaint, Plaintiff asserts claims for declaratory judgment, inspection rights, breach of fiduciary duty, unjust enrichment, fraud, and tortious interference with contract. In addition to damages, he seeks imposition of a constructive trust and other equitable relief. (Am. Compl. 18–19.)

15. Plaintiff must be a shareholder to have standing to pursue both the derivative claims, *see* N.C.G.S. § 55-7-41, as well as the direct claim to exercise

inspection rights, *see* N.C.G.S. § 55-16-02. Plaintiff contends that he is a 10% shareholder, but Defendants argue that he is not a shareholder at all. Given the threshold importance of the issue, the Court entered an Order on 10 December 2020 limiting initial discovery and dispositive motions to Plaintiff's status as a shareholder. (Ord., ECF No. 7.)

16. Following the close of the initial discovery period, Defendants moved for partial summary judgment on Plaintiff's declaratory judgment claim, seeking to establish as a matter of law that Plaintiff is not a shareholder of Wilkes Sombrero ("Defendants' Motion"). (Defs.' Mot. Partial Summ. J., ECF No. 12.) Conversely, Plaintiff moved affirmatively for partial summary judgment declaring him to be a shareholder and permitting him to exercise shareholder inspection rights ("Plaintiff's Motion"; together, the "Motions"). (Pl.'s Mot. Partial Summ. J., ECF No. 14.)

17. With the benefit of full briefing and a hearing on 19 August 2021, during which all parties were heard through counsel, the cross-motions are now ripe for determination.

18. The Court, having considered the Motions, the briefs filed by the parties, the arguments of counsel, and other matters of record, concludes for the reasons stated below that the Motions are **DENIED**.

### IV. LEGAL STANDARD

19. Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is

entitled to a judgment as a matter of law." N.C. R. Civ. P. 56(c). In deciding a motion for summary judgment, the Court views the evidence in the light most favorable to the nonmoving party, taking its evidence as true and drawing inferences in its favor. *See, e.g.*, *In re Will of Jones*, 362 N.C. 569, 573 (2008).

20. "An issue is 'genuine' if it can be proven by substantial evidence and a fact is 'material' if it would constitute or irrevocably establish any material element of a claim or a defense." *Lowe v. Bradford*, 305 N.C. 366, 369 (1982).

21. Affirmative summary judgment on a party's own claims for relief carries an even greater burden. *Brooks v. Mount Airy Rainbow Farms Ctr., Inc.*, 48 N.C. App. 726, 728 (1980). The moving party "must show that there are no genuine issues of fact, that there are no gaps in his proof, that no inferences inconsistent with his recovery arise from the evidence, and that there is no standard that must be applied to the facts by the jury." *Parks Chevrolet, Inc. v. Watkins*, 74 N.C. App. 719, 721 (1985). Therefore, it is "rarely . . . proper to enter summary judgment in favor of the party having the burden of proof." *Blackwell v. Massey*, 69 N.C. App. 240, 243 (1984); *see Banc of Am. Merch. Servs., LLC v. Arby's Rest. Grp., Inc.*, 2021 NCBC LEXIS 61, at *10–11 (N.C. Super. Ct. June 30, 2021).

22. In either case, when ruling on a motion for summary judgment, a trial court may not resolve issues of fact and must deny the motion if there is any genuine issue of material fact. *Singleton v. Stewart*, 280 N.C. 460, 464 (1972).

## V. ANALYSIS

### A. Issues of Fact with Respect to Plaintiff's Status as a Shareholder Preclude Summary Judgment for Either Party.

23. The parties disagree on the central issue of whether Plaintiff is a shareholder of Wilkes Sombrero. They each point to evidence that they contend establishes their positions as a matter of law. However, the Court determines that on the record presented, genuine issues of material fact remain to be determined by a jury and neither party's evidence establishes Plaintiff's shareholder status as a matter of law.

### 1. <u>Plaintiff's Failure to Produce a Stock Certificate is Not Dispositive.</u>

24. Defendants first contend that Plaintiff's inability to produce a stock certificate or related documentation evidencing his shareholder status is dispositive of whether he is, in fact, a shareholder. (Br. Supp. Defs.' Mot. 9–11.) The argument is unavailing.

25. The North Carolina Business Corporations Act (the "Act") defines "shareholder" as "the person in whose name shares are registered in the records of a corporation or the beneficial owner of shares to the extent of the rights granted by a nominee certificate on file with a corporation." N.C.G.S. § 55-1-40(22). The Act makes clear, however, that "[s]hares may but need not be represented by certificates." N.C.G.S. § 55-6-25(a); *see also Powell Bros. v. McMullan Lumber Co.*, 153 N.C. 52, 55 (1910) (stating that a "certificate neither constitutes [one's] title nor is necessary to it, but only a memorial of it" (citation omitted)). Indeed, the Act provides that "[u]nless the articles of incorporation or bylaws provide otherwise, the board of

directors of a corporation may authorize the issue of some or all of the shares of any or all of its classes or series without certificates." N.C.G.S. § 55-6-26(a). Official statutory commentary explains that the statute gives a board of directors the "widest discretion so that a particular class or series of shares might be entirely represented by certificates, entirely uncertificated, or represented partly by each." Official Comment to N.C.G.S. § 55-6-26.

26. Here, it is undisputed that Plaintiff never received a stock certificate reflecting his ownership interest. The Court concludes that fact is not dispositive, however. Wilkes Sombrero's Articles of Incorporation suggest, but do not specifically require, that shares of its stock be evidenced by a certificate. Rather, the Articles of Incorporation provide only that the shares of stock issued by the corporation bear a restrictive legend:

> The corporation shall have authority to issue One Hundred Thousand (100,000) shares with no par value. The transfer of shares of stock in this corporation is subject to the terms and conditions of a franchise agreement with Taco Bell Corp. *The shares of stock issued by this corporation shall bear a restrictive legend as follows*:
>
>> "The transfer of this stock is subject to the terms and conditions of a franchise agreement with Taco Bell Corp. Reference is made to said franchise agreement and to restrictive provisions of the charter and bylaws of this corporation."
>
> The provisions of the franchise agreement with Taco Bell Corp. that affect the transfer of shares of stock of this corporation shall be restrictions upon the shares of stock issued by this corporation.

(Materials Supp. Pl.'s Mot. Partial Summ. J. Ex. C, at 437, Articles of Incorporation of Wilkes Sombrero, Inc., Section 4 (emphasis added).)

27.    Similarly, Section 13.3 of the Taco Bell Franchise Agreements requires that Wilkes Sombrero's stock certificates contain this same restrictive legend but does not mandate that stock certificates be issued:

> The Articles of Incorporation and the By-Laws of the assignee corporation shall reflect that the issuance and transfer of shares of stock are restricted, and *all stock certificates shall bear the following legend*, which shall be printed legibly and conspicuously on the face of each stock certificate:
>
>> "The transfer of this stock is subject to the terms and conditions of a franchise agreement with Taco Bell Corp.  Reference is made to said franchise agreement and to restrictive provisions of the charter and by-laws of this corporation."

(Materials Supp. Pl.'s Mot. Partial Summ. J. Ex. 8 to Ex. A, at 142 (emphasis added).)

28.    Defendants argue that the Articles of Incorporation and the Taco Bell Franchise Agreements require that a *certificate* with a restrictive legend be used to transfer shares.  But the word "certificate" does not appear in the company's Articles.  Nor do the Articles purport to alter North Carolina's statute permitting uncertificated shares.  *See* N.C.G.S. § 55-6-25(a).  Instead, the Articles of Incorporation require only that shares bear a restricted legend, and North Carolina law allows a corporation to meet that requirement in either of two ways:  through use of a share certificate, *see* N.C.G.S. § 55-6-25, or through use of another writing conveying the statutorily required information, *see* N.C.G.S. § 55-6-26.[2]  Therefore, the Court cannot conclude

---

[2] The requirement in N.C.G.S. § 55-6-26 that the writing evidencing uncertificated shares contain any restrictive information on their transferability—in addition to the other necessary information for certificates—supports the Court's conclusion that the language in Wilkes Sombrero's Articles of Incorporation is not a mandate that the corporation issue stock certificates.

as a matter of law that Plaintiff is not a shareholder merely because he has not produced a stock certificate.

29.    At the same time, however, the Court cannot conclude as a matter of law that Plaintiff *is* a shareholder based on the evidence that exists in the current record. If shares are uncertificated, N.C.G.S. § 55-6-26(b) and N.C.G.S. § 55-6-27 demand that within a reasonable time after issuance or transfer, the corporation send the shareholder a writing containing the basic information required to be on certificates (the name of issuing company; the fact that the issuing company is organized under North Carolina law; the name of the person to whom shares are issued; the number and class of shares; and, if applicable, any restrictions on transfer).

30.    In this case, a jury could reasonably conclude that the several writings received by Plaintiff in the course of his work for Wilkes Sombrero, when read together, convey the information required by statute. For example, it is undisputed that on 5 January 2006, shortly after Plaintiff finished the Taco Bell training program,[3] J.C. signed a Taco Bell "Corporate Franchise Ownership Representation Form" as secretary for Wilkes Sombrero certifying that Plaintiff owned 10% of the company. This document bears the company seal and contains the name of the issuing corporation, the name of the shareholder, and his percentage interest. *See* N.C.G.S. § 55-6-25(b). (Br. Supp. Defs.' Mot. Ex. G.) The fact that Wilkes Sombrero was organized under North Carolina law appears in the Application for Taco Bell

---

[3] Plaintiff alleges that he "completed the training in or around December 2005 or January 2006." (Am. Compl. ¶ 22.) Defendants do not challenge this assertion.

Franchise and Ownership Schedule, (Br. Supp. Defs.' Mot. Ex. F),[4] and in a 2007 document[5] memorializing a material modification to one of the franchise agreements, (Materials Supp. Pl.'s Mot. Partial Summ. J. Ex. 7 to Ex. A, at 128–30). *See* N.C.G.S. § 55-6-25(b). Moreover, as discussed above, the several Taco Bell Franchise Agreements and related modifications received and signed by Plaintiff, including one executed by Plaintiff and by J.C. as early as 12 July 2007, provide the necessary information regarding restrictions on transfer. (Materials Supp. Pl.'s Mot. Partial Summ. J. Ex. 8 to Ex. A, at 131–47.)[6] Whether Wilkes Sombrero sent the information to Plaintiff within a "reasonable time" after the alleged transfer of shares to him is an issue of fact that remains to be determined. N.C.G.S. § 55-6-26(b)[7]; *see Yancey v. Watkins*, 17 N.C. App. 515, 519 (1978) ("[I]n this State, authority is to the effect that, where this question of reasonable time is a debatable one, it must be referred to the jury for decision.") (quoting *Etheridge v. Atlantic C. L. R. Co.*, 209 N.C. 306, 331 (1936)).

---

[4] The exact date that the Application was completed is unclear, but the document includes references to March and April 2005. (Br. Supp. Defs.' Mot. Ex. F.)

[5] The summary page of the document is dated 24 January 2007, and the page bearing Plaintiff's signature is dated 12 March 2007.

[6] While the Franchise Agreement was undoubtedly drafted by Taco Bell and not by Wilkes Sombrero, the statute merely requires that Wilkes Sombrero send the written statement of information to the shareholder. Nothing in the language of the statute requires that Wilkes Sombrero draft the document. *See* N.C.G.S. § 55-6-26(b).

[7] For example, it is unclear based on the current record whether Plaintiff received this information by virtue of a 2006 modification to the Winkler Street franchise agreement signed by J.C. and Plaintiff on 25 January 2006. Only excerpts of that document are in the record. (*See* Br. Supp. Defs.' Mot. Ex. H.)

31.     Although the parties disagree regarding the import of these documents on the issue of whether uncertificated shares were issued, the Court concludes only that genuine issues of material fact exist such that judgment may not be awarded as a matter of law at this stage.[8] *See, e.g., Kinesis Adver., Inc. v. Hill*, 187 N.C. App. 1, 13 (2007) (genuine issue of material fact remained regarding whether uncertificated shares were issued).

## 2. Estoppel Principles are not Dispositive.

32.     Plaintiff contends that either equitable estoppel or quasi-estoppel applies to preclude Defendants from offering any evidence suggesting that Plaintiff is *not* a shareholder.  In short, Plaintiff's argument is that both J.C. and Wilkes Sombrero represented to Taco Bell in legal documents on multiple occasions that Plaintiff held a 10% ownership interest in Wilkes Sombrero.  Having done so, Plaintiff argues, Defendants cannot escape these representations, and the record, therefore, establishes as a matter of law that Plaintiff is, in fact, a shareholder of Wilkes Sombrero.  (Pl.'s Br. Supp. Mot. Partial Summ. J. 7–17, ECF No. 15.)

33.     Defendants maintain that Plaintiff cannot rely on estoppel, a defensive doctrine, to establish its claims for affirmative relief.  Alternatively, Defendants

---

[8] Furthermore, N.C.G.S. § 55-6-26(b) requires companies to provide shareholders with information regarding their ownership interests when they do not otherwise receive official certificates.  *See* Official Comment to N.C.G.S. § 55-6-26 (noting the required written statement "ensures that holders of uncertificated shares will receive from the corporation the same information that the holders of certificates receive when certificates are issued").  Nothing in the language of the statute suggests that the requirement is intended to be used as a sword against the unsuspecting shareholder.  Indeed, it would be a strange result if a company could unilaterally deprive a shareholder of ownership rights through its own failure to meet its statutory obligation to send the shareholder required information.

argue that Plaintiff has failed to offer evidence establishing as a matter of law that Defendants are estopped from contending that Plaintiff is not a shareholder. (Defs.' Br. Opp. Pl.'s Mot. Partial Summ. J. 6–11, ECF No. 17.)

34. North Carolina recognizes both equitable estoppel and quasi-estoppel. The elements of equitable estoppel are:

> (1) conduct on the part of the party sought to be estopped which amounts to a false representation or concealment of material facts; (2) the intention that such conduct will be acted on by the other party; and (3) knowledge, actual or constructive, of the real facts. The party asserting the defense must have (1) a lack of knowledge and the means of knowledge as to the real facts in question; and (2) relied upon the conduct of the party sought to be estopped to his prejudice.

*Chapel H.O.M. Assocs., LLC v. RME Mgmt., LLC*, 256 N.C. App. 625, 627–28 (2017) (citation omitted).

35. It is true that "[e]stoppels are protective only, and are to be invoked as shields, and not as offensive weapons." *Herring v. Volume Merch., Inc.,* 252 N.C. 450, 453 (1960). That said, either party may choose to invoke the shield of estoppel defensively in appropriate circumstances. *Krawiec v. Manly*, 2016 NCBC LEXIS 7, at *12 (N.C. Super. Ct. Jan. 22, 2016) ("[Equitable estoppel] provides a defense to bar enforcement of opposing claims or affirmative defenses." (citation omitted)), *aff'd*, 370 N.C. 602 (2018).

36. Here, Plaintiff does not seek to use equitable estoppel to defeat a counterclaim or to avoid an affirmative defense. Instead, Plaintiff attempts to apply equitable estoppel offensively in support of his own claim by pointing to corporate documents in which he and J.C. identified Plaintiff as a 10% owner of Wilkes

Sombrero. (Pl.'s Br. Supp. Mot. Partial Summ. J. 7–8.) Plaintiff argues that these prior representations preclude Defendants' position to the contrary in this litigation. (Pl.'s Br. Supp. Mot. Partial Summ. J. 7–8.) However, Plaintiff has not pleaded such a claim and, even if he had, North Carolina law does not recognize an affirmative claim for equitable estoppel. *See, e.g., Home Elec. Co. of Lenoir, Inc. v. Hall & Underdown Heating & Air Conditioning Co.,* 86 N.C. App. 540, 543 (1987); *Bohn v. Black,* 2019 NCBC LEXIS 35, at *26 (N.C. Super. Ct. June 3, 2019); *Rabinowitz v. Suvillaga,* 2019 NCBC LEXIS 8, at *36 (N.C. Super. Ct. Jan. 28, 2019); *Regency Ctrs. Acquisition, LLC v. Crescent Acquisitions, LLC,* 2018 NCBC LEXIS 7, at *16–17 (N.C. Super. Ct. Jan. 24, 2018).

37. Plaintiff's attempt to use the doctrine of quasi-estoppel to achieve summary judgment is equally unavailing. Quasi-estoppel, also known as "estoppel by benefit," "does not require detrimental reliance per se by anyone, but is directly grounded instead upon a party's acquiescence or acceptance of payment or benefits by virtue of which that party is thereafter prevented from maintaining a position inconsistent with those acts." *Godley v. Cnty. of Pitt*, 306 N.C. 357, 361 (1982) (citation omitted).

38. Application of quasi-estoppel is highly fact dependent. Unlike equitable estoppel, quasi-estoppel is "inherently flexible and cannot be reduced to any rigid formulation." *Whitacre P'ship v. BioSignia, Inc.*, 358 N.C. 1, 18 (2004) (*citing Taylor v. Taylor*, 321 N.C. 244, 249 n.1 (1987)); *see also* 28 Am. Jur. 2d *Estoppel and Waiver* § 173 ("As a general rule, unless the facts are undisputed or only one reasonable

inference can be drawn from them, whether the facts presented adequately establish estoppel is for the jury or other trier of fact to decide.").

39. Disputed material facts preclude application of quasi-estoppel against Defendants on this record. For example, at least one of the documents signed by J.C. representing to Taco Bell that Plaintiff had a 10% ownership interest in Wilkes Sombrero was the Application prepared by Plaintiff himself, not J.C. (Pl.'s Dep. 7:9–15.) *See* 28 Am. Jur. 2d *Estoppel and Waiver* § 120 ("[A] person may not, by his or her own act, create an estoppel in his or her favor[.]")[9].

40. Finally, on this record, Plaintiff fails to shoulder the substantial burden necessary to prevail on an affirmative motion for summary judgment. Plaintiff's receipt of W-2 wages as opposed to shareholder distributions or K-1 forms, for example, contradicts the existence of his alleged ownership interest. *Parks Chevrolet, Inc.*, 74 N.C. App. at 721 (Plaintiff "must show that there are no genuine issues of fact, that there are no gaps in his proof, that no inferences inconsistent with his recovery arise from the evidence, and that there is no standard that must be applied to the facts by the jury."). Where genuine issues of material fact exist, summary judgment is not proper.

**B. The Limitations Period in Chapter 28A Is Not Controlling.**

41. Defendants argue that Plaintiff cannot claim shareholder status because he did not pursue a timely claim pursuant to the North Carolina statutes

---

[9] While it is not dispositive on a quasi-estoppel theory, the statement regarding ownership made in the Application may, when considered in context, have evidentiary value as an admission against interest. The Court makes no determination at this stage with respect to that issue.

setting forth the procedure for the disposition of claims in estate administration. (Br. Supp. Defs.' Mot. 7–9.)

42. Chapter 28A of the North Carolina General Statutes provides: "If a claim is presented to and rejected by the personal representative or collector . . . the claimant must, within three months, after due notice in writing of such rejection, commence an action for the recovery thereof[.]" N.C.G.S. § 28A-19-16.

43. It is undisputed that Plaintiff presented a claim against the estate on 24 May 2019, (Br. Supp. Defs.' Mot. Ex. L), and it was subsequently denied in writing, (Br. Supp. Defs.' Mot. Ex. M). He did not commence this action within three months thereafter. (*See* Compl.) While his failure to file a timely action under N.C.G.S. § 28A-19-16 may impact any claims he brings as a creditor, that failure does not determine his rights as an owner. In this Motion, Plaintiff asks for a judgment declaring what he contends was already his; he does not seek to acquire additional assets from the estate. *See Poteat v. Robinson*, 90 N.C. App. 764, 765 (1988) (holding that N.C.G.S. § 28A-19-16 "applies to creditors' claims against an estate"); *Jacobs v. Brewington,* 258 N.C. App. 462, 465 (2018) (statute does not apply to bar a plaintiff's claim if the plaintiff is not a creditor of the estate). Chapter 28A therefore does not bar Plaintiff's claims.

## VI.     CONCLUSION

44. For these reasons the Court hereby **DENIES** the cross-motions for partial summary judgment and **ORDERS** as follows:

a. Plaintiff's First Cause of Action seeking a declaratory judgment with respect to his status as a shareholder, as well as his Second Cause of Action for Inspection pursuant to N.C.G.S. § 55-16-02, shall proceed to trial at a time to be later determined by the Court;

b. Within twenty (20) days from the date of this Order, the parties shall jointly file a revised Case Management Report and submit a proposed Case Management Order to the Court concerning the adjudication of the other claims and counterclaims at issue in this action.

IT IS SO ORDERED, this the 16th day of December, 2021.


/s/ Julianna Theall Earp
_____
Julianna Theall Earp
Special Superior Court Judge
 for Complex Business Cases